**Carl GOUDAS; Marilyn Goudas, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent– Appellee.**

No. 97–1022.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 27, 1998.

Decided Feb. 23, 1998.

---

Frederick N. Widen (argued and briefed), Benjamin J. Ockner (briefed), Kahn, Kleinman, Yanowitz & Arnson, Cleveland, OH, for Petitioners–Appellants.

Stuart L. Brown, Internal Revenue Service, Office of Chief Counsel, Washington, DC, Regina S. Moriarty (argued and briefed), Teresa E. McLaughlin (briefed), U.S. Department of Justice, Appellate Section, Tax Division, Washington, DC, for Respondent–Appellee.

Before: GUY, NELSON, and SUHRHEINRICH, Circuit Judges.

## OPINION

RALPH B. GUY, Jr., Circuit Judge.

Petitioners, Carl and Marilyn Goudas,[1] appeal the decision of the United States Tax Court upholding a $230,158 income tax deficiency. The Commissioner of Internal Revenue (Commissioner) had assessed that amount based on capital gains received by Carl Goudas (Goudas or Taxpayer) from the 1988 sale of a shopping mall. Goudas contended that based on the structure of the transaction, no gains had accrued and therefore it was a non-taxable event. For the reasons that follow, we find petitioner's claims to be without merit and conclude no error has been shown. Accordingly, we affirm.

## I.

In 1975, Taxpayer formed a general partnership, Pecaris Enterprises (Pecaris), with two other individuals, Christ Spillas and Peter Boyas. In 1978 the partners executed a written partnership agreement. Under that agreement, Boyas, who had provided the initial financing for the partnership, took a 50 percent interest, while the other two each took 25 percent.

Pecaris was formed to purchase and hold commercial real estate. Spillas handled financial matters, including rent collection, bookkeeping and taxes. An accounting firm prepared the partnership's taxes. As managing partner, Goudas identified prospective properties and negotiated their purchase and sale. Boyas was not involved in the partnership's day-to-day functioning.

In 1987, Goudas and another individual, Vincent S. Giorgi, formed the general partnership, Coastal Investors Co. (Coastal), to purchase a shopping center located in Willowick, Ohio (the Mall) that was owned by Pecaris. Under the terms of Coastal's partnership agreement, Goudas had a 90 percent interest in the partnership and Giorgi, a 10 percent interest. The agreement required the partners to contribute initial capital to acquire the Mall and to provide initial working capital in proportion to their partnership interest.

Coastal obtained financing for the purchase from Canada Life Assurance Company (Canada Life). Canada Life valued the Mall at $5.5 million and was willing to lend $4,100,000, 75 percent of that value. Goudas, as a partner in both Pecaris and Coastal, acted on behalf of both entities in negotiating the purchase agreement and the determination of a purchase price. Goudas' partners in Pecaris, however, did not know until after the sale that Goudas held an ownership interest in Coastal.

A $4.8 million figure was set, $700,000 more than the $4.1 million figure to be pro-

---

1. Marilyn Goudas is a party to this tax deficiency case by virtue of having filed a joint tax return with her husband for the relevant tax year. She was not involved in the transaction at issue in this case, however, and therefore for ease of reference we refer hereinafter to petitioners as petitioner.

vided by Canada Life.[2] All three Pecaris partners executed the purchase agreement on behalf of Pecaris and Giorgi signed for Coastal. As arranged by Goudas, Continental Title Company (Continental) provided escrow services and title insurance for the transaction. The mortgage loan proceeds of $4,100,000 were deposited in an escrow account. The additional $700,000 was made up by two credits, one for $100,000 and one for $600,000. The $100,000 figure represented a brokerage commission purportedly earned by Goudas.[3] The $600,000 figure reflected a down payment that Goudas told Continental he had already collected from Pecaris.[4] This amount was to be deducted from Goudas' "share of distribution" from the escrow account. Continental's fee was determined based on the $4.8 million purchase price.

Coastal recorded the purchase in its general ledger. The $700,000 portion of the $4,800,000 purchase price that was not part of the mortgage proceeds was entered as a capital contribution by Goudas. Giorgi also initially contributed $70,100 in capital to the partnership.

Based on Goudas' 25 percent partnership interest in Pecaris, he was entitled to proceeds from the sale of the Mall, after liabilities and closing costs, in the amount of $695,687. Spillas, who had the same percentage interest as Goudas in the partnership, received a direct cash payment from the escrow account in that amount. Boyas also received a direct cash payment of $1,391,566 for his respective share. Goudas actually received $95,783, consisting of his share minus the $600,000 credit to Pecaris.

Pecaris reported the transaction as a sale of the Mall for $4,800,000 on its Form 1065 U.S. Partnership Return of Income for 1988. The gain recognized, $3,311,873, was computed as follows:

| | | |
|---|---|---|
| Gross sales price ... | . | $4,800,000 |
| Cost or other basis plus expenses of sale | $3,022,670 | |
| Depreciation allowed ... | $1,534,543 | |
| Adjusted basis ... | | $1,488,127 |
| Total gain ... | . | $3,311,873 |

Twenty-five percent of this amount, $827,968, was attributed to Goudas.

In contrast, Coastal and Goudas reported the transaction as non-taxable. Coastal's year-end balance sheet disregarded Goudas' capital contribution of $700,000. On Goudas' return, he attached a Form 8082, Notice of Inconsistent Treatment or Amended Return, indicating that he was taking a position inconsistent from Pecaris. Goudas reported that he had not received any gains but, rather, had "Traded Up Real Estate Interest In Like–Kind Exchange."

The Internal Revenue Service audited Goudas and issued a notice of deficiency for the $230,158 tax calculated to be owed on the $827,968 capital gain. The IRS also assessed additions to tax for negligence and substantial understatement of tax. See I.R.C. §§ 6653, 6661. In response, Goudas filed a petition in Tax Court challenging these amounts. The Tax Court upheld the deficiency but rejected the additions to tax. Taxpayer now appeals.

### II.

■ Taxpayer contends that the Tax Court improperly characterized the nature of the conveyance. Instead of finding that Pecaris conveyed a 100 percent interest in the Mall to Coastal in exchange for $4.8 million, Taxpayer alleges the court should have found that Pecaris conveyed a 75 percent interest, in exchange for $4.1 million. Goudas further contends that either of two scenarios then occurred: (1) he separately conveyed his 25 percent interest to Coastal as distributed by Pecaris or (2) Pecaris made a capital contribution to Coastal of a 25 percent interest in the Mall. That partnership interest, in turn, was then distributed by Pecaris to Goudas.[5]

---

2. This figure was also notably $700,000 less than the $5.5 million value estimated by Canada Life.

3. Petitioner now contends that the $100,000 "represented a purchase price adjustment."

4. This representation was apparently untrue.

5. Goudas takes issue with the Tax Court's comment that this latter proposition was not raised by the parties. Even assuming it was raised, it is not supported by the record, for the reasons discussed in this opinion.

Goudas claims that by failing to recognize the true structure of the transaction, the court erroneously evaluated his claim and the determination upholding the deficiency must be reversed. In particular he challenges the court's findings that (1) gain resulted to Goudas from the transaction; (2) the dominant aspect of the transaction was a sale for cash; (3) the direct deed of the Mall from Pecaris to Coastal precluded Goudas' contention that he received from Pecaris a distribution of a 25 percent interest in the Mall; and (4) Goudas failed to raise the alternative argument that the transaction involved the part-sale, part-capital contribution by Pecaris of the Mall to Coastal. Taxpayer concedes that "[i]n the event a 100% interest in the Mall was sold by Pecaris ... resulting in an aggregate gain to Pecaris of $3,311,873, then appellants ... would consequently agree with the Tax Court's position that $827,968 of the gain should be allocated to Mr. Goudas."

Tax treatment of income derived from partnerships is governed by subchapter K of the Internal Revenue Code. I.R.C. § 701 *et seq.* A partnership is not a taxable entity. *Id.* § 701. Rather, income is reported through individual partners' returns, based on distributive share. *Id.* § 702(a).

A taxpayer must generally recognize gain realized upon the sale of property. *Id.* § 1001(c). Two exceptions to this rule include (1) when a partner contributes property to the partnership in exchange for a partnership interest, *id.* § 721(a); and (2) when a distribution does not exceed the adjusted basis of a partner's interest in the partnership, *id.* § 731(a)(1). Under § 732(a), the basis of such property (other than money) is its adjusted basis to the partnership immediately prior to distribution. These nonrecognition provisions do not apply, however, to transactions between a partner and a partnership when the partner is engaging in the

transaction outside his capacity as a partner. *Id.* § 707(a).

Taxpayer bears the burden of proving the structure of the transaction. *See Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933). While a taxpayer may choose the structure of a transaction, "once having done so, he must accept the tax consequences of his choice, whether contemplated or not, and may not enjoy the benefit of some other route he might have chosen to follow but did not." *Commissioner v. National Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 148, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974) (citations omitted).

We conclude the Tax Court properly characterized the structure of the transaction as a straight sale of Pecaris' entire ownership interest in the Mall. The documents relating to the transaction reflect a $4.8 million sale price. The purchase agreement signed by all three Pecaris partners indicates a sale price of $4.8 million, $700,000 more than what petitioner claims was agreed upon. The escrow statements also reflect that price. The real property conveyance fee was $4,800 based on ten cents per hundred dollars of sale. Both the selling partnership's and the purchasing partnership's records show a $4,800,000 purchase price. The warranty deed filed at the time of sale reflects that the entire property was conveyed.[6] This higher figure, moreover, was the basis for the distribution of net proceeds. Finally, the Pecaris partnership agreement does not provide for the special allocations of profit that Goudas contends occurred in this case; i.e., only some of the partners, Boyas and Spillas, received profits from the sale of the Mall.[7]

Not until one year after the sale occurred did tax treatment of the transaction begin to change. At that time, Coastal adjusted its

---

**6.** Petitioner challenges the Tax Court's characterization of the contradiction between petitioner's argument that Pecaris only sold a 75 percent undivided interest in the Mall and the terms of the deed as a "fatal flaw" to petitioner's argument. Even if such language were too strong, the deed was relevant evidence in ascertaining the intent of the parties regarding the percentage of ownership interest to be conveyed.

**7.** Petitioner explains this inconsistency by arguing that his actions in purportedly causing only a 75 percent interest in the Mall to be sold to Coastal could be construed as an amendment to the partnership agreement. Even assuming he could cause such an amendment, we reject the contention that only a 75 percent interest was sold.

journal entries to reflect the acquisition of the Mall as a part sale of a 75 percent interest by Pecaris, part contribution of a 25 percent interest by Goudas. Goudas' 1988 tax return, filed in August 1989, treated Goudas' involvement in the transaction as a partnership interest contribution. Other than Taxpayer's word and that of the partnership in which he holds a 90 percent interest, there is no further evidence to substantiate his claim of this arrangement. There is no writing reflecting any grant by Pecaris to Goudas of an interest in the Mall. Goudas stipulated that he has "neither held record title to the Mall nor held record title to any divisible portion of the Mall."

Goudas further contends that the transaction should not be characterized as a sale for cash because he did not advance any cash. The cash proceeds from the mortgage, however, provided 85 percent of the funds for the purchase. Goudas satisfied the remaining $700,000 obligation through a series of credits based upon his brokerage commission and his share of the net proceeds from the sale as a partner in Pecaris.

Goudas chose the structure of this transaction. He represented both sides of the transaction in negotiations. He did not reveal his relationship with Coastal, the purchaser, to his partners at Pecaris.[8] The evidence contemporary to the transaction supports the Commissioner's claim that it was a straight sale. Under these circumstances, we conclude that the Tax Court correctly determined that the applicable tax code provisions were those pertaining to sales of property, I.R.C. § 1001 *et seq.*, and not those pertaining to nonrecognition of gain, *id.* §§ 721, 731.

**AFFIRMED.**

---

8. We find this fact to be particularly compelling support for the Tax Court's decision. If Goudas' partners did not know that he held any interest in Coastal, they could not have known he wanted to receive a distribution of a 25 percent interest in the Mall for contribution to Coastal's capital.

Petitioner's argument that the transaction was merely a refinancing of his interest in the Mall and his purchase of his partners' interests is also undermined by his failure to reveal any ownership interest in Coastal at the time of the sale.