**F I L E D**
United States Court of Appeals
Tenth Circuit

**DEC 27 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

TWENTY MILE JOINT VENTURE,
PND, LTD., Tax Matters Partner;
PARKER PROPERTIES JOINT
VENTURE, PDW&A, INC., A Partner
Other Than the Tax Matters Partner,

          Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE,

          Respondent-Appellee.

Nos. 97-9003, 97-9004, 97-9005

---

APPEALS FROM THE DECISIONS OF THE
UNITED STATES TAX COURT
(T.C. Nos. 18386-92, 18387-92)

---

Submitted on the briefs:

R. James Nicholson, Englewood, Colorado for the Petitioners-Appellants.

Teresa E. McLaughlin and Kenneth W. Rosenberg, Tax Division, Department of
Justice, Washington, D.C., for the Respondent-Appellee.

---

Before **BRORBY, HOLLOWAY**, and **BRISCOE**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

These appeals from decisions of the Tax Court involve related parties and all arise from a single transaction. [1] Two of the appeals, Nos. 97-9004 and 9005, must be dismissed for lack of jurisdiction. However, as explained below, we affirm the decision of the Tax Court in No. 97-9003.

# I

## A

In 1983 a small group of real estate investors and developers joined with Empire Savings, Building and Loan Association (Empire) to acquire a large tract of property in Parker, Douglas County, Colorado for development. Empire, a federally regulated thrift institution, provided virtually all of the initial financing for the planned project and also acquired an equity interest through its wholly owned subsidiary, E.S.L. Corporation (ESL). The primary individuals in the group of investors were Mr. James Nicholson, Mr. Philip D. Winn, and Mr. David A. Gitlitz (the investors). The investors and ESL formed a partnership named the Parker Properties Joint Venture (Parker Properties), which is one of the Appellants in these matters, specifically in No. 97-9005 which refers to Tax Court Docket No. 18386-92

---

[1]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause therefore is ordered submitted without oral argument.

with a "Parker Properties Joint Venture" caption. The investors collectively made an initial capital contribution of $1000 and received a fifty per cent interest in the Parker Properties Joint Venture partnership, as did ESL. The partners made few, if any, additional capital contributions over the life of the partnership. II R. 46-47.

Sales of units of the Parker Properties project started out well. Based on this initial success, the investors joined with ESL again, forming a second partnership in 1985 to purchase and develop a nearby tract of land, also in Douglas County. This partnership, named the Twenty Mile Joint Venture (Twenty Mile), is the Appellant in No. 97-9003, now before the court. As with the Parker Properties partnership, the investors collectively made an initial capital contribution of $1000 and shared a fifty per cent interest in the partnership, with ESL also contributing $1000 and receiving a fifty per cent interest. As was the case with Parker Properties, the partners of Twenty Mile made few, if any, additional capital contributions over the life of the partnership. II R. 183-84. Also following the same pattern established in the Parker Properties project, almost all the capital for the Twenty Mile project came from loans from Empire.

This overview of the factual background of these appeals has been simplified. In each of these partnerships, the investors actually participated indirectly through closely held corporations and partnerships which apparently consisted of the investors and their close relatives. These details are unimportant to the issues

presented in these appeals, however, and to simplify our review of the facts involved here, we have ignored these intermediate entities and have referred to the investors as if they individually were partners of Parker Properties and Twenty Mile.

The parent company of Empire, Baldwin United Corporation, became insolvent. In the resulting bankruptcy proceedings, another thrift institution, Commercial Federal Savings and Loan Association (Commercial), acquired Empire and its subsidiary, ESL, on April 30, 1987. Commercial thus became the successor-in-interest to Empire as creditor to the joint venture partnerships and, through the acquisition of ESL, as one-half owner of Parker Properties and Twenty Mile. Prior to this acquisition, Commercial had never participated as an equity investor in projects like Parker Properties and Twenty Mile and did not intend to change this corporate philosophy. Commercial was also influenced by the fact that the real estate market was on the decline. Thus, Commercial wanted to sever its relationship with the joint venture partnerships.

B

Beginning soon after Commercial's April, 1987 acquisition of Empire and ESL, Commercial approached the investors to suggest that they try to find another lender. Commercial's goal was to receive as much cash as possible and to be indemnified from all continuing liabilities associated with the joint venture partnerships. Because Commercial realized the real property securing the loans had

diminished in value, it was willing to accept less than the outstanding balance of the loans in order to liquidate its interests and to avoid future liabilities associated with the projects.

In early 1988, the investors entered into negotiations with Capitol Federal Savings and Loan Association (Capitol Federal) to arrange for new financing so that Commercial's interests could be bought out and its association with the partnerships terminated. Negotiations continued for some time, leading up to an agreement reached on June 28, 1988 (the Agreement).

A few days earlier, on June 20, 1988, Commercial's counsel had faxed a first rough draft agreement to the investors' attorney. Exhibits 15 & 16. The draft stated that the partnerships' outstanding loan balances owed to Commercial totaled $15,972,365. This figure included outstanding loans of Parker Properties for $9,319,963; Twenty Mile for $3,395,492; and Parker 480 for $3,256,910. [2] The draft then indicated Commercial was willing to accept $11 million in satisfaction of the outstanding loans and as payment for its interests in the joint ventures, with payment to be allocated between Commercial's interests as partner and creditor. Specifically, this first draft stated that Commercial would accept the sum of $10,990,000 in full

---

[2] "Parker 480" was a third partnership formed by the investors and financed by Empire. Empire did not, however, have any equity interest in Parker 480. Parker 480 was not a party in the Tax Court and is relevant only because the Agreement included provisions to repay some of Parker 480's outstanding debt.

settlement and satisfaction of the $15,972,365 loan balances, and would sell its interests as a partner in Parker Properties and Twenty Mile for $10,000. Exhibit 16 at 2. The draft agreement provided the $11 million would be paid to Commercial in the form of $8 million in cash and a $3 million promissory note. This first June 20, 1988, draft made no mention of any contribution to capital on the part of Commercial.

No more than two days later, conversations between lawyers for the negotiating parties resulted in a counter proposal by the investors who, as noted, were primarily Nicholson, Winn and Gitlitz. As described in a June 22, 1988, letter by Commercial's counsel, the investors had proposed a significant change in the form of the transaction. Exhibit 17. The investors' proposal, as described by Commercial's attorney in this letter, was that the differences in the amounts owed by Parker Properties and Twenty Mile to Commercial and the amounts to be paid under the Agreement, be designated as contributions to capital by Commercial. Specifically, the investors proposed that $3,419,963 of Parker Properties' debt to Commercial be "convert[ed] to equity" and that the same be done with $1,395,492 of Twenty Mile's debt. (Hereinafter, these items will sometimes be referred to as the disputed sums.) All other essential terms were the same. Thus, the investors' proposal did not alter the amount actually being paid toward the partnerships' debts to Commercial, but it did structure the transaction for tax purposes. The evidence

-6-

of Parker Properties and Twenty Mile at trial was that the provision for conversion of debt to equity was requested after having received tax advice from their attorney and that it was a critical term to them.

Commercial consented to the proposal and faxed the investors' attorney a revised draft agreement. Exhibit 18. The revised draft included language stating that "Commercial, on behalf of E.S.L., hereby contributes to Parker Properties, as additional capital, the sum of $3,419,963.00 in the form of a reduction in the outstanding obligation to Commercial from Parker Properties, reducing such obligation to $5,900,000.00." *Id.* at 2. Similar language was included with respect to Twenty Mile. The parties exchanged several additional draft agreements over the next few days, all of which contained the capital contribution language sought by the investors. Exhibits 19-21.

On June 27, 1988, Commercial requested its accountant to comment on the agreement "from a tax standpoint." Exhibit 22. After reviewing the draft, the accountant observed, in a memorandum dated June 28:

> It is fairly obvious in the agreement that Commercial is forgiving approximately $4.8 million of debt. The equity interest received is worthless and Commercial intends to charge off the portion of the debt so exchanged. The charge off will be taken during the year ending June 30, 1988 and will be listed along with Commercial's other loans charged off.

*Id.* Later that day, the parties formally executed the Agreement. Exhibit 14. The record does not show whether the accountant's opinion as quoted above was

communicated to decision makers at Commercial before the Agreement was executed by them.

The Agreement stated, *inter alia*, that (1) Commercial, on behalf of ESL, was contributing "additional capital" to Parker Properties and Twenty Mile by reducing their respective outstanding debt obligations by $3,419,963 and $1,395,492;[3] (2) ESL was conveying its ownership interests in Twenty Mile to Parker Properties for $5,000, and its ownership interests in Parker Properties to the remaining partners for an additional $5,000; (3) the partnerships (including Parker 480) were paying, in the form of cash or promissory notes, the amount of $11 million; and (4) the remaining partners agreed to indemnify Commercial and ESL from certain listed claims and/or liabilities against the partnerships. *Id.*

At the time Commercial took over Empire and assumed Empire's and ESL's interests, the Twenty Mile and Parker Properties partnerships allegedly had a number of substantial liabilities related to the ongoing development efforts on the properties.

---

[3]The June 28, 1988, Agreement stated the pertinent provisions in paragraphs 2 and 4 as follows:

> 2. Commercial, on behalf of E.S.L., hereby contributes to Twenty Mile, as additional capital, the sum of $1,395,492.00 in the form of a reduction in the outstanding obligation to Commercial from Twenty Mile, reducing such obligation to $2,000,000.00.
>
> * * *
>
> 4. Twenty Mile hereby tenders to Commercial, and Commercial hereby accepts, the sum of $2,000,000.00, in full payment of the balance of its indebtedness to Commercial.

These obligations included guarantees flowing from the issuance of certain municipal bonds, real estate taxes, litigation concerning water rights, a defaulted note, and annexation agreements to widen certain roads. II R. 53-58, 192-200. The evidence of Appellants Twenty Mile and Parker Properties, uncontested by the Commissioner, was that Commercial sought indemnification from these existing and expected liabilities from the beginning of the negotiations over its withdrawal from the partnerships. These liabilities will be discussed further below because of their importance to the primary argument presented by Appellants.

In January 1989, Commercial sent both Parker Properties and Twenty Mile an IRS Form 1099-A, used to document income from the "Acquisition or Abandonment of Secured Property." Issuance of these forms 1099 reflected Commercial's decision, in keeping with the advice received from its accountant on the day of the Agreement, to treat the disputed sums on its tax return as forgiveness of debt rather than as contributions to capital. Thus, the 1099 forms reported discharge of indebtedness income in the amount of $3,419,963 for Parker Properties and $1,395,492 for Twenty Mile. Exhibit 34.

On their 1988 federal income tax returns, Parker Properties and Twenty Mile each reported these amounts as "other income," but claimed offsetting deductions in equal amounts under "other deductions." Exhibits 1 & 2. Each of the partnerships also included the following explanation in an addendum to its return: "The

partnership received a 1099 for [amounts denoted above] described as income from forgiveness of indebtedness. This was not reported as income since it resulted from a contribution to capital rather than from debt relief." *Id.* On its own 1988 federal tax return, Commercial deducted the amounts reported on the partnerships' Forms 1099-A as uncollectible interest and bad debt write-off. Exhibits 36 & 37. Commercial did not list discharge of indebtedness income realized by ESL in the Agreement when preparing the tax return for that subsidiary; an amended return was later filed to report such income.

## II

In 1992, the Commissioner issued notices of final partnership administrative adjustment to Parker Properties and Twenty Mile. Exhibits 3 & 4. These notices announced the Commissioner's decision that the partnerships had realized income from discharge of indebtedness in the amounts characterized as contributions to capital in the Agreement of June 28, 1988. Parker Properties and Twenty Mile filed separate petitions in the Tax Court for review of the Commissioner's decision. The two petitioners contended that they had realized no taxable income from the Agreement because the disputed sums were actually contributions to capital by Commercial, as the parties had labeled them in the June 28, 1988, Agreement.

The Tax Court rejected the petitioners' theory. *Parker Properties Joint Venture v. Commissioner*, 71 T.C.M. 3195 (1996). Citing the general principle that

-10-

substance governs over form with respect to tax consequences, the Tax Court held the classification of the debt reduction as a contribution to capital did not reflect the substance of the transaction. The Tax Court observed that Commercial's goal in the transaction was to disassociate itself from the joint ventures, a purpose which the court found inconsistent with the ususal motives for capital contributions. Tax Ct. Op. at 14-15. This inconsistency was evident in the basic terms of the transaction, in which Commercial nominally contributed $4.8 million to the joint ventures and at the same time sold its interests in the joint ventures "for a mere $10,000." *Id.* at 15.

The Tax Court rejected the joint ventures' argument that the apparent anomaly was explained by the fact that Commercial was ultimately relieved of exposure to substantial liabilities, so that there was a valid business purpose for the form of the transaction. The judge observed that the "liability relief was a practical consequence of the plan." *Id.* The court also noted that the joint ventures and the investors had not entered into the Agreement in order to expand their capital structure. The court noted that the first proposed draft of the Agreement did not include the provision regarding contributions to capital and observed, erroneously, that the critical language was not inserted until the day that the Agreement was finalized and after

-11-

tax advice had been obtained. [4]

In sum, the Tax Court ruled that the disputed sums represented discharge of indebtedness, thus upholding the adjustments that had been made by the Commissioner, but challenged by the petitioners. Tax Ct. Op. at 14-16.

**III**

Two motions raising jurisdictional issues must be resolved before we move to the merits. To put the issues in context, we note that Twenty Mile and Parker Properties filed separate petitions in the Tax Court. In June 1993, all parties in both cases filed a joint motion to consolidate the cases "for the purposes of the trial, briefing and opinion." Tax Ct. Doc. 11; *see also Tax Court Memorandum Findings and Opinion* at 1 n. 1 ("These cases were consolidated for purposes of trial, briefing, and opinion."). The Tax Court granted the motion on July 1, 1993, by stamping "granted" on the pleading. At the end of its June 19, 1996, opinion affirming the Commissioner's determinations in both cases, the court stated that "[d]ecisions will be entered" under the applicable tax rule. The court then entered its decision in each case on December 6, 1996.

---

[4] This was erroneous because the second draft of the Agreement included the contribution to capital provisions. This was two days, not eight days, after the first draft and six days before the Agreement was finalized. Moreover, the taxpayers' undisputed evidence was that they had raised this point even before the first draft had been prepared and that it had been an objective of theirs for some time.

-12-

Twenty Mile filed a timely notice of appeal (97-9003) on March 6, 1997, within the 90-day limit after the entry of the decisions. *See* Fed. R. App. P. 13 (a)(1). That notice named only "TWENTY MILE JOINT VENTURE, PND, LTD., TAX MATTERS PARTNER," as Appellant and referred only to the separate Tax Court docket number concerning the petition which Twenty Mile had filed. On March 21, 1997, Twenty Mile and Parker Properties collectively filed an "amended notice of appeal" (97-9004), citing both Tax Court docket numbers. That same day, Parker Properties also filed its own notice of appeal (97-9005).

On the same day that the two later notices of appeal were filed, March 21, 1997, Twenty Mile filed in this court a "Motion To Reform The Caption And Amend The Notice Of Appeal," by which it sought to add Parker Properties as an appellant in the first numbered appeal, No. 97-9003, for which the timely March 6, 1997, notice of appeal had been filed. The Commissioner filed a memorandum in opposition to this motion and a motion to dismiss Parker Properties' appeal, No. 97-9005. These motions raise the same jurisdictional issues. We must decide whether Parker Properties' appeal in No. 97-9005 is timely. The timely filing of a notice of appeal from the Tax Court is mandatory and jurisdictional. *Okon v. Commissioner*, 26 F.3d 1025, 1026 (10th Cir. 1994).

Parker Properties advances two main arguments in support of its timeliness theory. It first contends that amendment of the original notice of appeal to

specifically name Parker Properties was proper under Fed. R. App. P. 3(c) because Parker Properties' omission from the caption in Twenty Mile's appeal was "inadvertent." Parker Properties also points out that it and Twenty Mile have identical general partners and counsel, and that the Commissioner was aware that both partnerships intended to appeal. The rule invoked by Parker Properties provides, in relevant part:

> (1) The notice of appeal must:
> (A) specify the party or parties taking the appeal by naming each one in the caption or the body of the notice, but an attorney representing more than one party may describe those parties with such terms as "all plaintiffs," "the defendants," "the plaintiffs A, B, et al.," or "all defendants except X";
> . . .
> (4) *An appeal must not be dismissed* for informality of form or title of the notice of appeal, or *for failure to name a party whose intent to appeal is otherwise clear from the notice*.

Fed. R. App. P. 3(c) (emphasis added).

There is no mention of Parker Properties whatsoever (either by name or Tax Court docket number) in Twenty Mile's timely notice of appeal underlying No. 97-9003. Thus we simply do not agree that Parker Properties' intent to appeal was clear from the notice, and Parker Properties' reliance on Fed. R. App. P. 3(c) is unavailing. The fact that the Commissioner may have suffered no prejudice is not dispositive here. *See Concorde Resources, Inc. v. Woosley (In re Woosley)*, 855 F.2d 687, 688 (10th Cir. 1988) (refusing to apply "harmless error" analysis to Rule 3(c) appeal requirements based on rule's jurisdictional nature, citing *Torres v. Oakland*

-14-

*Scavenger Co.* , 487 U.S. 312, 317 n.3 (1988)).

Parker Properties argues that *Torres* was overruled by the 1993 amendments to the Federal Rules of Appellate Procedure. The 1993 amendments were indeed intended to ameliorate the perceived harshness of the Court's holding in *Torres.* However, we have examined the amended language, as quoted above, and are persuaded that the rule, as amended, provides no basis for Parker Properties' argument. Although the amended rule provides somewhat more flexibility than the language in effect when *Torres* was decided, it still requires that the notice of appeal make clear *in some fashion* the identity of each party desiring to join the appeal. The timely notice filed by Twenty Mile did not make clear in any fashion that Parker Properties intended to appeal from the separate decision entered against it by the Tax Court.

Parker Properties' second argument on timeliness is that it was granted an additional thirty days in which to appeal under Fed. R. App. P. 13(a) after the timely notice had been filed by Twenty Mile. Rule 13(a)(1) provides:

> Review of a decision of the United States Tax Court is commenced by filing a notice of appeal with the Tax Court clerk within 90 days after the entry of the Tax Court's decision. . . . . If one party files a timely notice of appeal, any other party may take an appeal by filing a notice of appeal within 120 days after entry of the Tax Court's decision.

We think it clear that this provision applies only if the "other party" is a party to the proceeding from which the timely appeal has been taken. This is the plain reading

of Fed. R. App. P. 13 (a)(1) and no other construction seems supportable.

Because Parker Properties was not originally a party to the proceeding in which the decision appealed by Twenty Mile was entered, Parker Properties can take advantage of the additional thirty day period provided by Fed. R. App. P. 13 (a)(1) only if it became a party to that proceeding under the terms of the order of consolidation. We conclude that Parker Properties did not do so. We have noted that the "order" of the court was evidenced only by stamping the word "granted" on the motion for consolidation filed by the parties. The parties did not seek complete merger of the two cases but only consolidation "for the purposes of the trial, briefing and opinion." The fact that the opinion of the Tax Court specifically noted that *"[d]ecisions* ," in the plural, will be entered, and the subsequent actions of the court and parties in carrying out that directive make it very apparent that the two cases had not lost their individual identities. [5] *See Page v. Commissioner* , 823 F.2d 1263, 1268-69 (8th Cir. 1987).

In sum, we find that the motion to reform the caption and amend the notice of

---

[5]The opinion of the Tax Court stating that "[d]ecisions will be entered" also referred to Tax Court Rule 155. Rule 155 governs the process of translating the Tax Court's legal holdings into dollars and cents. It provides for the parties to submit stipulated calculations or, if necessary, adversarial positions on the computations which should follow from the legal rulings. Twenty Mile and Parker Properties submitted separate calculations in response to the Tax Court's directive. The separate nature of the cases thus apparently was recognized by Parker Properties and its counsel.

appeal in No. 97-9003 should be denied and that the motion to dismiss the appeal in No. 97-9005 should be granted. Likewise, on our own motion we conclude we should dismiss the appeal in No. 97-9004 for the same reasons. *See Okon v. Commissioner*, 26 F.3d at 1026-27 (untimely appeal must be dismissed, even though no party contests jurisdiction).

We proceed to the merits of the Twenty Mile appeal.

**IV**

**A**

Decisions of the United States Tax Court are reviewed "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. § 7482(a)(1). We review the Tax Court's factual findings for clear error and its legal conclusions de novo. *See Schelble v. Commissioner*, 130 F.3d 1388, 1391 (10th Cir. 1997). "[F]indings of law and of ultimate fact derived from applying legal principles to subsidiary facts are subject to *de novo* review." *First National Bank v. Commissioner*, 921 F.2d 1081, 1086 (10th Cir. 1990). The only issue in this case is whether the disputed item is properly characterized as forgiveness of debt, as the Commissioner and the Tax Court ruled, or as contribution to capital of the partnership as the parties denominated the item in the Agreement. The Tax Court labeled this issue one of ultimate fact, and we agree. Therefore, our review is *de novo*. We are mindful that "[p]artnership taxation is . . . generally

-17-

recognized as the most difficult area of the Internal Revenue Code." Harold Gill Reuschlein & William A. Gregory, *The Law of Agency and Partnership* § 256 at 411 (2d ed. 1990).

According to the Commissioner, the Agreement encompassed little more than Commercial relinquishing its equity interests in the partnerships and accepting partial payment in satisfaction of the partnerships' outstanding debt obligations to Commercial. Characterization of the transaction as a contribution to capital, the Commissioner thus reasons, is an elevation of form over substance and must be disregarded as a transparent attempt to avoid discharge of indebtedness income.

Twenty Mile contends that while an equity investment at the outset of an enterprise is made with an expectation of return, the present transaction must be viewed within its context: the ventures were losing money and could only be expected to continue to do so, at least for the immediate future. Twenty Mile insists, with some reason, that cutting one's losses is another realistic motivation underlying this transaction. In particular, Twenty Mile maintains Commercial was required to make a capital contribution in consideration for the remaining partners' agreement to indemnify Commercial from the joint ventures' present and future liabilities.[6] Twenty Mile claims the fact that "Commercial was allowed to pay this contribution

---

[6]Of course, the partners did not have the ability to discharge Commercial from its liabilities to third party creditors, so the promise of indemnification was the only protection against those liabilities which could be afforded.

to capital by reducing the amount of debt outstanding was simply a bookkeeping accommodation to Commercial given that it was the 100% owner of both the 50% General Partner (E.S.L.) and the lender (Commercial formerly Empire)." Appellants' Brief at 34-35.

As noted, the Tax Court rejected Twenty Mile's basic position that contribution to capital was involved, holding as an ultimate finding of fact that "Parker Properties and Twenty Mile's agreement with Commercial resulted in cancellation of indebtedness income." *Memorandum Findings of Fact and Opinion* at 12. We agree.

B

Our analysis begins by noting that, as a general rule, discharge of indebtedness is treated as income under the Internal Revenue Code. The Code broadly defines "gross income" as "all income from whatever source derived" except as expressly provided otherwise. 26 U.S.C. § 61(a). From its enactment, the "sweeping scope" of this provision and its statutory predecessors has been consistently emphasized by the Supreme Court. *See Commissioner v. Schleier*, 515 U.S. 323, 327-28 (1995); *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 429-32 & n.11 (1955).

Money received as a loan, however, does not qualify as income to the taxpayer because the taxpayer incurs an obligation to repay the loan in full at some future date. *See Commissioner v. Tufts*, 461 U.S. 300, 307 (1983). But if the loan is

discharged rather than repaid, income is attributed to the borrower. This concept of discharge of indebtedness income was first articulated in *United States v. Kirby Lumber Co.*, 284 U.S. 1 (1931), and later codified in 26 U.S.C. § 61(a)(12). Two rationales have been identified for this rule:

> This rule is based on the premise that the taxpayer has an increase in wealth due to the reduction in valid claims against the taxpayer's assets. In the alternative it has been suggested that taxation is appropriate because the consideration received by a taxpayer in exchange for [his] indebtedness is not included in income when received because of the obligation to repay and the cancellation of that obligation removes the reason for the original exclusion.

2 Jacob Mertens, Jr., *Mertens Law of Federal Income Taxation* § 11.01 (1996) (hereinafter *Mertens*). This principle applies with equal force to both recourse and nonrecourse loans. *See Tufts*, 461 U.S. at 308-09 & n.5; *Crane v. Commissioner*, 331 U.S. 1, 13-14 (1947). Thus it is clear, and uncontested by Appellant, that the disputed item is correctly charged to it as income if it represents discharge of indebtedness.

Twenty Mile contends, however, that the item should be treated as a contribution to capital, as agreed by the parties. Contributions to the capital of a partnership are generally treated as tax-free exchanges. *See* 26 U.S.C. § 721(a). "Generally, neither a partnership nor any of its partners need recognize gain or loss as a result of the contribution of property to the partnership in exchange for a

-20-

partnership interest." *Mertens* § 35.25. [7]

Twenty Mile invokes the principle that parties are permitted, within limits, to structure their transactions for tax purposes; in proper circumstances, the form chosen by the parties should be respected as controlling the substance of the transaction for tax purposes. We agree that "[a] tax avoidance motive for structuring a transaction in a particular way is not inherently fatal . . . ." *True v. United States*, 190 F.3d 1165, 1173 n.6 (10th Cir. 1999).

Nevertheless, the form chosen by the parties will be respected only if it comports with the reality of the transaction. The fact that here the Agreement characterized the transaction with Commercial as a capital contribution is not dispositive. Treasury regulations provide that "[i]n all cases, the substance of the transaction will govern, rather than its form." 26 C.F.R. §§ 1.707-1(a), 1.721-1(a). "To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective

---

[7]Twenty Mile disclaims reliance on section 721(a) because it is clear that the capital contribution at issue here (assuming *arguendo* that the disputed sum was a capital contribution) was not made in exchange for a partnership interest. Instead, as we understand it, Twenty Mile argues only that an additional contribution to capital was made with respect to the partnership interest already held by ESL and that such an additional contribution to capital would not constitute income to the partnership. Twenty Mile cites no authority to support this position, nor does the Commissioner cite any authority to the contrary. We need not and do not address this issue but, as the argument is presented to us, will assume that such an additional contribution to capital would not constitute income.

administration of the tax policies of Congress." *Commissioner v. Court Holding Co.*, 324 U.S. 331, 334 (1945). "Only a transaction that has 'economic substance which is compelled or encouraged by business or regulatory realities, is imbued with tax-independent considerations, and is not shaped solely by tax-avoidance features that have meaningless labels attached' will be recognized for tax purposes." *Jackson v. Commissioner*, 966 F.2d 598, 600 (10th Cir. 1992) (quoting *Frank Lyon Co. v. United States*, 435 U.S. 561, 583-84 (1978)). Although subchapter K of the Internal Revenue Code, 26 U.S.C. §§ 701-762, may have been adopted in part to increase flexibility among partners in allocating partnership tax burdens, *see Foxman v. Commissioner*, 41 T.C. 535, 550-51 (1964), *aff'd*, 352 F.2d 466 (3d Cir.)(1965), this flexibility is limited by the overarching principle that the substance of the transaction is controlling for tax purposes, *Colonnade Condominium, Inc. v. Commissioner*, 91 T.C. 793, 813-14 (1988). Therefore, our present task is to determine whether the form of the transaction in question truly reflects its substance.

The theory here of Twenty Mile is that the "form and the substance of the transaction documented in the Agreement was as a capital contribution." Appellants' Brief at 30. Appellants state:

> The requirement by the continuing partners that Commercial make a large capital contribution in order to be relieved and indemnified of the existing and continuing liabilities that they were subject to as a 50% General Partner was simply the price of exit from the partnerships and the assumption of Commercial's 50% share of General Partner liabilities by the continuing partners.

-22-

*Id.* at 31.

The difficulty for Twenty Mile is the failure of its proof to demonstrate such specific liabilities as proven amounts of exposure, so as to make the indemnification explanation credible. Thus even if such a scenario of an arrangement for indemnification could serve as the backdrop for a contribution of capital theory, the backdrop was not shown here by Twenty Mile's proof. Paragraph 11 of the Agreement describes only types of liabilities against which the partnerships agreed to indemnify Commercial. These liabilities were addressed at trial by Mr. Nicholson, one of the investors, and Mr. Gargaro, who had been the investors' primary point of contact with the lenders.

As to specific liabilities of Twenty Mile, there was evidence that Twenty Mile had entered into an agreement with the City of Parker to improve a particular street. Nicholson said that this liability "was never quantified, but it was probably in the ballpark – with grading that had to be done and so forth, I would say [$]7 -, $800,000." II R. 58. He said nothing about when this sum might have to be paid. *Id.* There was also testimony that there were real estate taxes due annually, but no attempt was made to estimate the amounts which might reasonably be expected to be owed by Twenty Mile for these taxes. All other liabilities listed in the Agreement and discussed at trial were either identified as liabilities of Parker Properties or were merely described as liabilities of the partnerships, without differentiation between

-23-

Twenty Mile and Parker Properties.  It is in this factual context that we must consider Twenty Mile's argument that the indemnity obligations it undertook in the Agreement demonstrate that the form of the agreement – that is, the characterization of the disputed sums as capital contributions rather than discharge of indebtedness – is consistent with the substance of the Agreement.

This is too slender a reed to support Twenty Mile's argument.  The evidence of liabilities of Twenty Mile as revealed in this record was insufficient to support any argument that the substance of this transaction was other than discharge of indebtedness.  The only attempt to quantify the liabilities of Twenty Mile was the estimate of $700,000 to $800,000, far less than the amount of the disputed sum - $1,395,492.  See Exhibit 34.  It is impossible to conclude, on this record, that the disputed sum was a realistic amount to require as a contribution to capital.  Significantly, Twenty Mile did not introduce at trial *any* evidence that the parties attempted to quantify the liabilities during the negotiation of the Agreement.  The Tax Court apparently concluded, as we do, that the amount of the "contribution to capital" was not calculated by that process.  Rather, it is apparent that the amount of the purported contribution to capital was simply the difference between the amount owed by Twenty Mile and the amount Commercial was willing to accept in satisfaction of the debt owed to Commercial.  This leads to the conclusion that the form was fiction rather than fact.  The fact was that the substance of the transaction was forgiveness

of debt.

## Conclusion

The reality of the situation was that Commercial wanted to disassociate itself entirely from the partnerships, not to contribute to their capital. Twenty Mile failed to show that the amount of the purported capital contribution represented a reasonable approximation of the departing partner's share of known and predictable liabilities against which the remaining partners promised to indemnify the departing partner, Commercial.

In sum, the motion to reform the caption and amend the notice of appeal in No. 97-9003 is **DENIED**, and the appeals in Nos. 97-9004 and 97-9005 are **DISMISSED**. The Tax Court's decision in No. 97-9003 is **AFFIRMED**.