**MAS ONE LIMITED PARTNERSHIP,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. C2–01–87.

United States District Court,
S.D. Ohio,
Eastern Division.

July 10, 2003.

Terrence Austin Grady, Columbus, OH, for Plaintiff.

Stephen T. Lyons, Washington, DC, for Defendant.

### *ORDER AND OPINION*

MARBLEY, District Judge.

### I. Introduction

This matter is before the Court on Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment. For the following reasons, Plaintiff MAS One Limited Partnership's Motion for Summary Judgment is **DE-NIED** and Defendant United States of America's Motion for Summary Judgment is **GRANTED**.

### II. Facts and Procedural History

Plaintiff MAS One Limited Partnership ("MAS One" or the "Partnership") is an Ohio limited partnership formed on December 16, 1986 for the purpose of owning and operating an office building in Florida. The sole general partner of MAS One is MAS One Generals ("Generals"), a Georgia joint venture. The sole limited partner of MAS One from 1986 until almost the end of 1994 was The Midland Mutual Life Insurance Company, an Ohio corporation.

MAS One was originally formed for the purpose of owning and operating an office building in Clearwater, Florida, known as the Barnett Bank Building (the "Barnett Building"). The Partnership purchased the Barnett Building in 1986, funding the purchase with a $10.8 million nonrecourse loan from The Lincoln National Life Insurance Company.

In 1989 the Partnership amended its limited partnership agreement to expand the purpose of the Partnership to constructing and operating a second office building in Clearwater, Florida, which became known as the Clearwater Tower. To fund the construction of the Clearwater Tower, the partnership borrowed $14.5 million (the "Tower Loan") from The Huntington National Bank ("Huntington"). Unlike the loan for the Barnett Building, the Tower Loan was a recourse loan, which meant that Generals, as the sole general partner of the Partnership, could be held personally liable for repayment of the loan in the event that the Huntington foreclosed on the loan and the value of the mortgaged property was insufficient to cover the debt.

As inducement to make the Tower Loan, Huntington required Midland to execute two guarantee agreements. The first agreement, titled Principal Reduction Guarantee, required Midland to repay $2.5 million of the principal of the Tower Loan upon substantial completion of the Clearwater Tower, as defined in the loan documents. Furthermore, Midland entered into a Debt Service Guaranty Agreement under which Midland guaranteed all interest payments for the life of the Tower Loan. Although the Debt Service Guaranty Agreement ran indefinitely until the Partnership repaid the entire amount of the Tower Loan, Midland only guaranteed interest payments so that it would not be required to set aside sufficient reserve funds to cover the entire balance of the Tower Loan.

In 1994, Midland, a mutual company at the time, decided to demutualize and become a stock company. As part of this process, Midland sought to divest itself of certain investments, including its investment in the Partnership. The Debt Service Guaranty Agreement, however, made it difficult for Midland to withdraw from the Partnership. Midland obtained permission from the Partnership to negotiate with Huntington the terms of a release from its guaranty of the Tower Loan interest payments. Officers at Midland attempted to quantify the value of its guaranty agreement in an effort to buy Midland's way out of the agreement. Ultimately, Midland's negotiations failed and Huntington refused to accept any of Midland's offers for terminating the Debt Service Guaranty Agreement.

Midland then orchestrated a plan through which the Clearwater Tower would be sold, the proceeds would be credited toward the balance of the Tower Loan, and Midland would pay Huntington the outstanding balance on the Tower Loan after the property was sold. On December 28, 1994, Midland abandoned its interest in the Partnership via a Notice of Abandonment of Limited Partnership Interest, received and acknowledged by Generals. On December 29, 1994, the Partnership sold the Clearwater Tower for $4.1 million, and the proceeds went directly to Huntington to pay down the Tower Loan. Also on December 29, 1994, Midland paid Huntington $8,388,824.47, which was the remaining balance on the Tower Loan.

On December 27, 1994, 1105 Corporation, an Ohio corporation ("1105 Corp."), purchased a 1% interest in the Partnership from Generals and was admitted to the Partnership as a limited partner. On December 29, 1994, Generals and 1105 Corp. executed a third addendum to MAS One's limited partnership agreement in which the parties agreed that Generals would continue to be the Partnership's sole general partner and would have a 98% interest in the partnership, while 1105 Corp. would be a limited partner with a 2% interest in the Partnership. The partnership agreement required 1105 Corp. to contribute only ten dollars in capital to the Partnership and 1105 Corp. had no future obligation to contribute capital.

On its 1994 Form 1065 income tax return, the Partnership claimed a $7.3 million loss on the sale of the Clearwater Tower, which the Partnership allocated 98% to Generals and 2% to 1105 Corp. The Partnership treated Midland's $8.3 million payment to Huntington as a capital contribution, and not as income to the Partnership.[1]

On November 2, 2000, the Internal Revenue Service (the "IRS") sent Generals, MAS One's tax matters partner, a Notice of Final Partnership Administrative Adjustment, in which the IRS required the Partnership to claim Midland's $8.3 million payment to Huntington as income on its 1994 income tax return. Disagreeing with this final determination, MAS One filed its Complaint in this case on January 29, 2001. The Complaint contains a single count alleging that the IRS's Notice of Final Partnership Administrative Adjustment to MAS One's 1994 partnership income tax return is erroneous. The Court has jurisdiction to review this matter pursuant to 28 U.S.C. § 1346(e) and I.R.C. § 6226. On October 15, 2002, both MAS One and the United States filed Motions for Summary Judgment. Both parties agree that there is no genuine issue of material fact, and the Court can therefore dispose of this case on summary judgment.

### III. Standard of Review

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to

---

1. In its Motion for Summary Judgment, MAS One includes about six pages of excerpts from the deposition testimony of attorney Charles Koenig, who advised the Partnership on the tax treatment of Midland's $8.3 million payment. The Government asks the Court to disregard or strike these pages of MAS One's motion because the Court should not consider expert testimony on an issue of law. MAS One responds at length arguing that the Court

should not disregard the testimony of Mr. Koenig because the Government, not MAS One, took Mr. Koenig's deposition and now wants his testimony disregarded only because it is inconsistent with the Government's position.

The Court will not give weight to Mr. Koenig's testimony as legal authority, but will consider Mr. Koenig's testimony to the extent that it sheds light on the facts of this case.

judgment as a matter of law." Fed. R.Civ.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). In response, the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the litigation. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991). In reviewing cross-motions for summary judgment, courts should "evaluate each motion on its own merits and view all facts and inferences in the light more favorable to the nonmoving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir.1994). Significantly, "[t]he filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolu-

tion on a stipulated record." *Taft Broad. Co.*, 929 F.2d at 248 (citing *John v. State of La. (Bd. of Trustees for State Colleges & Univ.)*, 757 F.2d 698, 705 (5th Cir.1985)).

## IV. Analysis

■ MAS One argues that Midland's $8.3 million payment to Huntington to satisfy the Tower Loan was a capital contribution to the Partnership, and as such was not taxable as income to the partnership pursuant to I.R.C. § 721(a). The United States (the "Government") argues that because Midland was no longer a partner at the time it made its $8.3 million payment to Huntington, that payment could not have been a capital contribution to the Partnership. Rather, the amount should be considered either gross income derived from business or discharge of indebtedness income, both of which are treated the same under I.R.C. § 61(a). Furthermore, the Government argues that even if Midland's payment is a capital contribution to the Partnership, the Court should apply the step transaction doctrine and conclude that the individual steps associated with Midland's abandonment of its partnership interest and sale of the Clearwater Tower should be collapsed into a single transaction that occurred on the same day. If the Court applies the step transaction doctrine, the Government contends that only Midland would be entitled to claim a loss on the sale of the Clearwater Tower pursuant to the Partnership's Limited Partnership Agreement. Under this analysis, Generals would be unable to claim any loss on the sale of the Clearwater Tower.

### A. Partnership Taxation Generally

A partnership is not subject to federal income tax; instead, individual partners pay taxes on their partnership income. I.R.C. § 701 (West 2002); *see also Goudas v. Comm'r*, 137 F.3d 368, 371 (6th Cir. 1998). The Supreme Court has described

a partnership as both an entity and a conduit for income tax purposes: "partnerships are entities for purposes of calculating and filing informational returns but ... they are conduits through which the taxpaying obligation passes to the individual partners in accord with their distributive shares." *Unites States v. Basye*, 410 U.S. 441, 448 n. 8, 93 S.Ct. 1080, 35 L.Ed.2d 412 (1973).

## B. Capital Contribution Versus Income

The Government argues that Midland's $8.3 million payment constituted taxable income to the partnership, either as ordinary business income or discharge of indebtedness income. MAS One contends that the $8.3 million payment was a capital contribution to the Partnership, which is not taxable as a gain or loss.

Pursuant to I.R.C. § 721(a), "[n]o gain or loss shall be recognized to a partnership or to any of its partners in the case of a contribution of property to the partnership in exchange for an interest in the partnership." In this case, however, Midland did not make the $8.3 million payment in exchange for a partnership interest. Midland was no longer a partner in the Partnership when it made the payment. Rather than making the payment in exchange for a partnership interest, Midland made the payment as part of its effort to *abandon* its partnership interest.

MAS One argues that Midland's $8.3 million payment was a capital contribution because Midland committed to make the payment while it was still a partner. MAS One, therefore, argues that Midland was merely fulfilling its partnership obligations, which continue even after a partner abandons its partnership interest. While a partner's obligations to a partnership may continue after the partner abandons its partnership interest, Midland was not obligated to make the $8.3 million payment on MAS One's behalf. Instead, Gen-

erals was personally liable for the Tower Loan, not Midland. Midland only guaranteed the interest payments on the Tower Loan, not repayment of the loan principal.

In evaluating a similar transaction, the Tenth Circuit decided that a departing partner's forgiveness of a loan to a partnership constituted discharge of indebtedness income to the partnership rather than a capital contribution. *Twenty Mile Joint Venture, PND, Ltd. v. Comm'r*, 200 F.3d 1268, 1278 (10th Cir.1999). The *Twenty Mile* court emphasized substance over form in finding that:

> The reality of the situation was that Commercial [the departing partner] wanted to disassociate itself entirely from the partnerships, not to contribute to their capital. [The partnerships] failed to show that the amount of the purported capital contribution represented a reasonable approximation of the departing partner's share of known and predictable liabilities against which the remaining partners promised to indemnify the departing partner, Commercial.

*Id.* Likewise, in this case, Midland's $8.3 million payment was not representative of any amount it owed the Partnership and Midland did not seek a new interest in the Partnership, but instead sought to depart the Partnership.

Therefore, the Court finds that Midland's $8.3 million payment constituted income to the partnership, not a capital contribution to the partnership.

## C. Generals's Basis in the Partnership

Although the Court rejects MAS One's position that Midland's $8.3 million payment constituted a capital contribution to the Partnership, even if the Court accepted that position, the analysis of the transaction would not end there. Instead, the Court would have to consider the effect of Midland's assumption of the $8.3 million

debt for which it was not otherwise liable. As the sole general partner, Generals was personally liable for the outstanding balance on the Tower Loan. Therefore, by making a capital contribution to the Partnership for $8.3 million, Midland would have assumed liability for the Tower Loan, and in turn, Generals would have received a deemed capital distribution from the Partnership pursuant to I.R.C. § 752(b). Section 752(b) provides that "any decrease in a partner's share of the liabilities of a partnership, or any decrease in a partner's individual liabilities by reason of the assumption by the partnership of such individual liabilities, shall be considered as a distribution of money to the partner by the partnership." I.R.C. § 752(b).

Although a partner and a partnership do not recognize gain or loss when a partner contributes capital to the partnership in exchange for an interest in the partnership, I.R.C. § 721(a), such a capital contribution increases a partner's basis in the partnership. A partner's basis in the partnership is equal to the value of money or property he has contributed to the capital of the partnership. I.R.C. § 722. A partner's basis is subject to adjustments pursuant to I.R.C. § 752. *Raphan v. United States*, 759 F.2d 879, 884 (Fed.Cir.1985). Section 752(a) provides that "[a]ny increase in a partner's share of the liabilities of a partnership, or any increase in a partner's individual liabilities by reason of the assumption by such partner of partnership liabilities, shall be considered as a contribution of money by such partner to the partnership." I.R.C. § 752(a). Likewise, section 752(b) provides that a decrease in a partner's share of partnership liabilities is considered a distribution to that partner. I.R.C. § 752(b).

The general partners of a partnership can be held personally liable for repayment of a recourse loan such as the Tower Loan. This assumption of liability for a

recourse loan is treated as a deemed contribution of capital to the partnership and increases a partner's basis in the partnership pursuant to I.R.C. § 752(a). Here, Generals was the only general partner of the Partnership at all times. Therefore, when the Partnership received the Tower Loan, Generals's basis in the partnership should have increased by the amount of the Tower Loan (minus the $2.5 million in principal that Midland agreed to pay upon substantial completion of the building), since Generals personally assumed liability for the loan.

This deemed capital contribution and positive basis in the Partnership would have then been reduced when the Partnership sold the Clearwater Tower and when Midland paid the balance on the Tower Loan. Both the proceeds from the sale of the building and Midland's payment went directly to Huntington to pay off the Tower Loan. Accordingly, when Midland paid the balance of the Tower Loan, Generals should have received a deemed distribution from the partnership pursuant to I.R.C. § 752(b) because Generals's individual liability as a partner would have decreased by the outstanding balance of the loan.

Therefore, even if the Court were to consider Midland's $8.3 million payment as a capital contribution to the Partnership, Generals would have been required to claim that payment as a deemed distribution because the payment relieved Generals of a personal liability to the Partnership. But because the Court finds that Midland's $8.3 million payment constituted income to the partnership, not a capital contribution, the Court will not further consider the tax implications of such a deemed distribution to Generals.

### D. Step Transaction Doctrine

The Government asks the Court to apply the step transaction doctrine in this case because the individual steps involved

with Midland's divestment of its Partnership interest should be viewed as a single transaction, not a series of independent transactions. MAS One argues that each independent transaction had a discrete business purpose and triggered incidents of taxation, and therefore, the step transaction doctrine is inapplicable in this case.

■ The Court first notes that the Government seems to request that the Court apply the step transaction doctrine only if the Court agrees with MAS One that Midland's $8.3 million payment on the Tower Loan constituted a capital contribution to the Partnership rather than income. This is an odd position, however, because application of the step transaction doctrine should not depend on whether the Government can prevail on an alternative theory. Although the Court agrees with the government that Midland's $8.3 million payment constituted income to the Partnership, the Court must nevertheless consider whether the step transaction applies in this case. If the step transaction does apply, the Court must alter its analysis accordingly. Indeed, the step transaction doctrine is not merely a method preventing tax avoidance, but can also be used for a taxpayer's benefit. *See Clark*, 489 U.S. at 738, 109 S.Ct. 1455 (applying the step transaction doctrine to reject the "counterintuitive conclusion urged by the Commissioner").

■ Courts apply the step transaction doctrine in cases where taxing the individual steps of a transaction rather than the transaction as a whole would eviscerate the substance of the transaction resulting in improper tax treatment of the whole transaction. *See True v. United States*, 190 F.3d 1165, 1174 (10th Cir.1999) (referring to the step transaction doctrine as an "incarnation of the basic substance over form principle"). Under the step transaction doctrine, "interrelated yet formally distinct steps in an integrated transaction

may not be considered independently of the overall transaction." *Comm'r v. Clark*, 489 U.S. 726, 738, 109 S.Ct. 1455, 103 L.Ed.2d 753 (1989). "The step transaction doctrine is a corollary of the general tax principle that the incidence of taxation depends upon the substance of a transaction rather than its form." *Sec. Indus. Ins. Co. v. United States*, 702 F.2d 1234, 1244 (5th Cir.1983); *see also Brown v. United States*, 782 F.2d 559, 563 (6th Cir.1986). For example, the doctrine may be used to tax a whole transaction composed of individual steps each of which would not be independently taxable. *Sec. Indus. Ins. Co.*, 702 F.2d at 1244.

■ The step transaction doctrine is inapplicable in this case because the substance and the form of the transactions in question do not differ in any meaningful way. MAS One makes no attempt to avoid taxation in this case by focusing on isolated steps of a transaction rather than a whole transaction. Instead, each of the "steps" of Midland's divestment of its interest in the Partnership had its own legitimate tax consequences. In fact, the tax consequences of each step of the transaction would be the same regardless of whether the Court views the transaction as a whole or as a series of isolated steps.

■ The Government's application of the step transaction doctrine to this case would require the loss on the sale of the Clearwater Tower to be allocated to Midland pursuant to MAS One's Limited Partnership Agreement. The Government cites no cases, however, where the step transaction doctrine has been applied to allocate losses in a particular way pursuant to a partnership agreement. Instead, the step transaction doctrine has no effect on the ability of partners to allocate partnership losses as they choose pursuant to contract. In this case, Midland abandoned its interest in the Partnership on Decem-

ber 28, 1994 and was no longer entitled to claim any of the Partnership's losses. This arrangement does not promote form over substance to defeat the purposes of the tax laws.

### V. Conclusion

For the foregoing reasons, Plaintiff MAS One's Motion for Summary Judgment is **DENIED** and Defendant United States of America's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**