In re Todd D. DAVIS, Debtor.

Philip J. Groetken, doing business as Phil Groetken Livestock, Plaintiff–Appellee,

v.

Todd D. Davis, Defendant–Appellant.

BAP No. UT–99–027.
Bankruptcy No. 97–28235.
Adversary No. 97–2410.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

March 15, 2000.

---

N. George Daines (Christopher L. Daines with him on the brief) of Barrett & Daines, Logan, UT, for Defendant–Appellant.

James C. Jenkins of Olson & Hoggan, P.C., Logan, UT, for Plaintiff–Appellee.

Before McFEELEY, Chief Judge, BOHANON, and ROBINSON, Bankruptcy Judges.

### OPINION

ROBINSON, Bankruptcy Judge.

Debtor Todd Davis ("Davis") appeals the judgment of the bankruptcy court determining the debt owed Philip Groetken ("Groetken") was nondischargeable due to fraud under 11 U.S.C. § 523(a)(2)(A),[1] as well as imposing sua sponte sanctions in

---

**1.** Future references are to Title 11 of the    United States Code, unless noted otherwise.

the form of attorney fees against both Davis and counsel under Fed. R. Bankr.P. 9011. The court also awarded costs to Groetken. For the reasons set forth below, we AFFIRM the court's finding of nondischargeability and award of costs. The appeal of Barrett & Daines is DISMISSED for lack of appellate jurisdiction. The order for sanctions and attorneys fees is remanded for further proceedings relative to Davis.

## I. Background.

Davis and Groetken are cattle traders who primarily broker cattle for other parties. Davis did business from Utah, while Groetken operated out of Iowa. They had done business together since 1991. On several occasions, Davis left blank, signed checks at Groetken's office, authorizing Groetken to fill out the checks once the cattle he had purchased had been loaded and weighed and the price had been determined.

Sometime prior to May 24, 1993, Davis ordered 62 head of cattle from Groetken. Davis overnighted a blank, signed check to Groetken. At the time of shipment, with Davis's approval, Groetken's secretary filled in the blank check with the date (May 24, 1993), the payee (Groetken), and the amount ($44,496.00). The cattle were delivered to Davis on May 24, 1993. Groetken deposited the check on May 25, 1993, and it was returned for insufficient funds on or about May 27, 1993.

On May 26, 1993, Davis ordered an additional 127 head of cattle from Groetken. Groetken testified that he shipped the cattle upon Davis's promise that he would wire payment the next morning. The funds were not received. Davis told Groetken that he had in fact wired the funds, but they were mistakenly sent to the wrong recipient and he would take care of the matter. When this did not happen, Davis told Groetken that he would express mail the payment, which he also failed to do. Davis resold the 127 head of cattle, but failed to pay Groetken.

As a result of Davis's failure to pay, Groetken had to obtain a short-term loan from his bank to cover the NSF check and sign a note with the auction company from whom he purchased the cattle for the May 26, 1993 transaction. Groetken's bank also pulled his line of credit and no longer gave him immediate credit on checks deposited.

Groetken was able to collect partial payment from Davis totaling $76,496.00, leaving an unpaid principal balance of $59,-160.06. Payments received on June 30, 1993 ($14,496.00), and July 14, 1993 ($30,-000), equaled the amount owed on the May 24, 1993 transaction. In March 1994, Groetken initiated an action in Utah State Court against Davis alleging Davis had defrauded him. Davis filed bankruptcy prior to trial of that matter.

In the bankruptcy proceeding, Groetken filed a complaint to determine dischargeability pursuant to § 523(a)(2)(A). At trial, Davis justified his failure to pay Groetken as "playing the float," whereby he would buy cattle with a personal check with the intent to cover that check by depositing the buyer's check before the earlier check arrived. Davis contended he was caught short when Cache Valley Bank unilaterally decided not to honor checks drawn on uncollected funds, and the check to Groetken was returned NSF.

Cache Valley Bank, represented by the law firm of Barrett & Daines, also filed a dischargeability complaint against Davis alleging he had given the bank a false financial statement and committed fraud. The parties settled this action with a stipulation of nondischargeability in excess of $100,000.00. After the settlement of the Cache Valley Bank Action, Barrett & Daines entered their appearance as co-counsel with Steven Jewell in representing Davis in the Groetken matter. Davis expressly waived any conflict. At trial, Groetken attempted to admit into evidence the bank's adversary complaint file. Davis objected on the grounds it was prejudicial and constituted unfair surprise. The

bankruptcy court noted a potential conflict of interest, and took judicial notice of the file, relevant to Davis's intent.

During the trial, Groetken's counsel informed the bankruptcy court that he had brought an attorney's fee affidavit and was prepared to file it after the court rendered its decision. At the close of evidence, the court invited counsel to file the affidavit and "use that in your argument." The court ruled that the debt to Groetken was nondischargeable due to fraud. The court further found that counsel for Davis had asserted a frivolous defense and assessed attorney fees pursuant to Rule 9011 against Davis and his counsel in the amount of $10,071.96, the full amount set forth in the affidavit. The court stated that, because of counsel's dual representation of Davis and Cache Valley Bank, counsel could not have allegiance to the bank in the collection of the nondischargeable judgment while providing a defense in Davis's best interest. The court also chastised Davis for arguing that the funds were not owed to Groetken, but rather the livestock company from which Groetken purchased the cattle at auction.

At the direction of the bankruptcy court, counsel for Groetken submitted proposed findings of fact and conclusions of law as well as a certificate of costs in the amount of $4,520.06. The court entered the findings and judgment over Davis's apparent objection, which is not in the record on appeal. This appeal followed.

## II. Appellate Jurisdiction.

This Court, with the consent of the parties, has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1). Under this standard, we have jurisdiction over this appeal. The parties have consented to this Court's jurisdiction in that they have not opted to have the appeal heard by the United States District Court for the District of Utah. *Id.* § 158(c); 10th Cir. BAP L.R.

8001–1(a) and (d). The appeal was filed timely by the Debtor, and the bankruptcy court's order is "final" within the meaning of § 158(a)(1). *See* Fed. R. Bankr.P. 8001–8002.

## III. Standard of Review.

The Bankruptcy Appellate Panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree, or remand with instructions for further proceedings. Fed. R. Bankr.P. 8013. "For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable de novo), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

■ The issue of dischargeability of debt is a question of federal law, not state law, and is governed by the provisions of the Bankruptcy Code. *Grogan v. Garner,* 498 U.S. 279, 284, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). A finding of whether a requisite element of a § 523(a)(2)(A) claim is present is a factual determination reviewed for clear error. *See Anastas v. American Sav. Bank,* 94 F.3d 1280, 1283 (9th Cir.1996). A finding of fact is clearly erroneous only if the court has "the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

> "It is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Krasnov v. Dinan,* 465 F.2d 1298, 1302 (3d Cir. 1972).

*Gillman v. Scientific Research Prods. (In re Mama D'Angelo, Inc.)*, 55 F.3d 552, 555 (10th Cir.1995).

■ In reviewing an imposition of Fed. R. Bankr.P. 9011 sanctions, the appellate court must apply an abuse of discretion standard. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *Masunaga v. Stoltenberg (In re Rex Montis Silver Co.)*, 87 F.3d 435 (10th Cir.1996). The standard of review for an award of costs to the prevailing party is also abuse of discretion. *Jones v. Unisys Corp.*, 54 F.3d 624 (10th Cir.1995).

## IV. Discussion.

### A. Section 523(a)(2)(A).

■ To prevail on a nondischargeability claim under § 523(a)(2)(A),[2] a creditor must prove by a preponderance of the evidence that:

1) the debtor made a false representation;

2) the debtor had the intent to deceive the creditor;

3) the creditor relied on the debtor's conduct;

4) the creditor's reliance was justifiable; and

5) the creditor was damaged as a proximate result.

*See Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir.1996) (elements of § 523(a)(2)(A)); *see also Field v. Mans*, 516 U.S. 59, 74–75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (creditor's reliance must be justifiable, but not necessarily reasonable); *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (creditor must prove elements by a pre-ponderance of the evidence). The discharge provisions of § 523 will be strictly construed against the creditor and liberally construed in favor of the debtor. *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997).

■ The fraudulent intent element of § 523(a)(2)(A) need not be shown by direct evidence, but may be inferred from the totality of the circumstances. *American Sur. & Cas. Co. v. Hutchinson (In re Hutchinson)*, 193 B.R. 61, 64 (Bankr. M.D.Fla.1996) (citation omitted). The bankruptcy court must consider whether the totality of circumstances "presents a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor." 3 William L. Norton, Jr., Norton Bankruptcy Law and Practice 2d § 47:16, n. 62 (1999) (citing *In re Devers*, 759 F.2d 751 (9th Cir.1985)). The court may consider not only the debtor's conduct at the time of the representations, but may consider subsequent conduct, to the extent that it provides an indication of the debtor's state of mind at the time of the actionable representations. *Visotsky v. Woolley (In re Woolley)*, 145 B.R. 830, 836 (Bankr. E.D.Va.1991).

We will discuss each transaction in turn.

### 1) The May 24, 1993 transaction.

■ The bankruptcy court held that presentation of the check was a representation by Davis to Groetken that there were sufficient funds to pay that check. The court found that Groetken relied on this representation, that Davis knew this representation was false, knew that he had no funds from which the check could be paid, and knew the check would not be paid. The court further found that, on

**2.** Section 523(a)(2)(A) provides in relevant part, that:

    (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

    . . .

    (2) for money ... to the extent obtained by—

    (A) false pretenses, a false representation, or actual fraud, other that a statement respecting the debtor's or an insider's financial condition....

11 U.S.C. § 523(a)(2)(A).

May 24, 1993, there were insufficient funds in Davis's account to cover the check.

A debtor does not make a false representation under § 523(a)(2)(A) merely by presenting a check for payment which later bounces. *See Jarboe Sales Co. v. Degraffenreid (In re Degraffenreid)*, 131 B.R. 178, 180 (Bankr.N.D.Okla.1991); *Jack Master, Inc. v. Collins (In re Collins)*, 28 B.R. 244, 247 (Bankr.W.D.Okla.1983). Rather, the creditor must show that the debtor was guilty of misrepresentation with intent to defraud in direct connection with issuance of the check. *Collins*, 28 B.R. at 247. A false representation can be established if the debtor did not intend to pay the creditor when the check was issued and knew that the check would bounce. *Degraffenreid*, 131 B.R. at 180.

Applying these principles to the facts established by the record, we are not persuaded that Groetken sustained his burden. A sufficient case was not made to demonstrate the requisite degree of intent. There was no evidence that Davis made any representation to Groetken that the check was good for payment. While we do not condone the actions of Davis, it appears that he relied on "playing the float" to cover the check to Groetken, as he had successfully done in the past. Moreover, Davis's subsequent payment of the check mitigates the inference of the necessary intent to defraud Groetken. Accordingly, we are compelled to conclude that it was error for the bankruptcy court to deny Davis's discharge with respect to the May 24, 1993 transaction. We will refrain from reversing the court's decision, however, as the issue appears to be moot. On June 30 and July 14, 1993, Davis gave Groetken two cashier's checks in the amount of $14,-496.00 and $30,000.00, respectively, which corresponds with the amount of the insufficient funds check, $44,496.00. Reversal of the bankruptcy court's decision would be ineffective, as there is no longer a debt to be excepted from discharge. *See Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895) (a controversy is no longer "live" if the reviewing court is incapable of rendering effective relief or restoring the parties to their original position).

### 2) The May 26, 1993 transaction.

The bankruptcy court found that Davis made a false representation that he would wire transfer funds to Groetken and that he had no intention of wiring the funds since he did not have funds in his bank account from which those funds could be wired. We agree.

While Davis may have successfully "played the float" when issuing checks, he could not rely on the same strategy when promising to send funds by wire. The record shows that the balance in Davis's bank account on May 26 and 27, 1993 was approximately $47,000.00, well under the $91,160.06 he falsely represented he would wire to Groetken. Davis's subsequent conduct demonstrates his intent not to wire the funds. When pressed by Groetken, Davis made further misrepresentations about wiring the funds, even going so far as to state the funds had in fact been wired, but were mistakenly sent elsewhere by the wiring agent. Groetken met his burden of proof by a preponderance of the evidence, and it was not error for the bankruptcy court to deny Davis's discharge with respect to this transaction.

### B. Fair Trial.

Davis contends that he was denied a fair trial because the bankruptcy court took judicial notice of the adversary action brought by Cache Valley Bank relative to the limited issue of Davis's intent.[3] Davis does not argue that it was error for the court to take judicial notice of the adversary file; rather, he argues that any

---

**3.** A court may take judicial notice of an adjudicative fact that is both "not subject to reasonable dispute" and "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b).

relevancy the file had to intent was outweighed by its prejudice and that admission of the file constituted unfair surprise.[4]

Relevant evidence is evidence that tends to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence. Fed. R.Evid. 401; *United States v. Mendoza–Salgado*, 964 F.2d 993 (10th Cir.1992). Fed.R.Evid. 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "[T]he exclusion of relevant evidence under Rule 403 is an extraordinary remedy to be used sparingly." *Wheeler v. John Deere Co.*, 862 F.2d 1404, 1408 (10th Cir.1988) (internal quotation omitted). " '[U]nfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.' " *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir.1977), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978). The decision to exclude or admit evidence under this rule is within the sound discretion of the trial court, and will not be reversed absent a clear abuse of discretion. *Whiteley v. OKC Corp.*, 719 F.2d 1051, 1057 (10th Cir. 1983). Moreover, error in the exclusion or admission of evidence is harmless if it does not affect the substantial rights of the parties, and the burden of demonstrating that substantial rights were affected rests with the party asserting error. Fed. R.Evid. 103(a)(1); Fed.R.Civ.P. 61. *See Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1446 (11th Cir.1984), *cert. de-*

*nied*, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985).

We find no abuse of discretion by the bankruptcy court. The adversary file included a stipulated judgment between Davis and Cache Valley Bank acknowledging Davis's obligation was nondischargeable, based on credit obtained by false financial statements and misrepresentations. This evidence was probative as to Davis's state of mind when he issued the NSF check and promised to wire funds to Groetken because of his purported reliance on a credit arrangement with Cache Valley Bank. Any prejudice stemming from admission of the adversary file relates to the revelation of the alleged attorney conflict of interest rather than Davis's dischargeability defense. Such prejudice, if any, is relative to the imposition of sanctions, which we have remanded to the bankruptcy court, *infra*.

We also reject Davis's argument that admission of the adversary file constituted unfair surprise. The Advisory Committee's Note to Rule 403 points out that this rule does not enumerate surprise as a ground for exclusion: "While it can scarcely be doubted that claims of unfair surprise may still be justified despite procedural requirements of notice and instrumentalities of discovery, the granting of a continuance is a more appropriate remedy than exclusion of the evidence.... Moreover, the impact of a rule excluding evidence on the ground of surprise would be difficult to estimate." Here, Davis failed to urge a motion for continuance in response to what he contends was unfair surprise. Further, this does not appear to be a case of "trial by ambush." Davis's counsel also represented Cache Valley Bank in the bank's adversary proceeding and should have been familiar with the

---

**4.** Davis also argues that the adversary file was inadmissable under Fed.R.Evid. 404, which excludes evidence of prior wrongs or bad acts for the purpose of proving character, but permits such evidence for proving intent. This objection was not made before the bankruptcy court, however, and we will not consider it for the first time on appeal. *Zeigler Eng'g Sales, Inc. v. Cozad (In re Cozad)*, 208 B.R. 495 (10th Cir. BAP 1997).

file. The adversary file did not create any new issues. Davis's intent was central to Groetken's dischargeability complaint, and the bank's adversary was admitted as relevant to his state of mind. *See Shelak v. White Motor Co.*, 581 F.2d 1155 (5th Cir. 1978) (limiting reversible error from unfair surprise to situations where a completely new issue is suddenly raised or a previously unidentified expert witness is suddenly called to testify).

Davis further contends the focus of the court on potential attorney conflicts was "overwhelming and unfair" to Davis and argues that he should be granted a new trial with a new judge. However, Davis failed to file a motion for new trial with the bankruptcy court. Fed.R.Civ.P. 59 (made applicable here by Fed. R. Bankr.P. 9023). An appellate court should not consider new issues not properly raised before the court below. *Zeigler Eng'g Sales, Inc. v. Cozad (In re Cozad)*, 208 B.R. 495 (10th Cir. BAP 1997).

### C. Sanctions.

█ At the close of trial, the bankruptcy court sua sponte imposed sanctions jointly and severally against Davis and counsel[5] for making a frivolous defense. As a threshold issue, we must decide whether we have appellate jurisdiction over all parties. Groetken asserts that this Court does not have jurisdiction as to the law firm of Barrett & Daines, Davis's attorneys, on the appeal of the award of sanctions because the firm is not listed as a party in the notice of appeal. We agree.

Fed. R. Bankr.P. 8001(a) sets forth that an appeal from a final judgment of the bankruptcy court:

> shall be taken by filing a notice of appeal with the clerk within the time allowed by

Rule 8002. An appellant's failure to take any step other than timely filing a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court or bankruptcy appellate panel deems appropriate, which may include dismissal of the appeal. The notice of appeal shall (1) conform substantially to the appropriate Official Form, (2) contain the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their respective attorneys, and (3) be accompanied by the prescribed fee.

Fed. R. Bankr.P. 8001(a) (emphasis added).

█ Rule 8001(a) grants the court broad discretion to take any appropriate action, including dismissal of the appeal, for failure to comply with non-jurisdictional steps. *See In re Bulic*, 997 F.2d 299, 301 (7th Cir.1993). However, the failure to name a party in the notice of appeal goes directly to jurisdiction. *Storage Tech. Corp. v. United States District Court*, 934 F.2d 244, 247 (10th Cir.1991). "The failure to name a party is more than excusable 'informality'; it constitutes a failure of that party to appeal." *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 314, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988) (interpreting Fed. R.App. P. 3(c)).[6]

█ The Tenth Circuit has applied the *Torres* rationale to bankruptcy appeals: "[E]ach and every appealing party must be specifically named in the notice of appeal or in a functionally equivalent document properly listing the appealing parties and filed within the appeal period." *Storage Tech.*, 934 F.2d at 248. The court further held that, because Rule 8001(a) does not contain a provision excusing informalities,

---

5. Christopher L. Daines of Barrett & Daines appeared on behalf of Davis at trial.

6. Former Fed. R.App. P. 3(c), as it was in effect at the time *Torres* was issued, stated:
   (c) Content of the Notice of Appeal. The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken.... An appeal shall not be dismissed for informality of form or title of the notice of appeal.

its requirements are actually stricter than those of Rule 3(c). *Id.* at 247 (citations omitted). *But see Citizens Bank & Trust Co. v. Case (In re Case),* 937 F.2d 1014, 1020 (5th Cir.1991) (*Torres* does not apply to Rule 8001(a), which does not have specificity requirement of Rule 3(c)).

In 1993, Rule 3(c) was amended to state that "[a]n appeal will not be dismissed . . . for failure to name a party whose intent to appeal is otherwise clear from the notice." Fed. R.App. P. 3(c) (amended 1998). Once a court determines "it is objectively clear that a party intended to appeal, there are neither administrative concerns nor fairness concerns that should prevent the appeal from going forward." Fed. R.App. P. 3(c) advisory committee notes, 1993 amendment. The Tenth Circuit recently held that "[a]lthough the amended rule [3(c)] provides somewhat more flexibility than the language in effect when *Torres* was decided, it still requires that the notice of appeal make clear in some fashion the identity of each party desiring to join the appeal." *Twenty Mile Joint Venture v. Comm'r,* 200 F.3d 1268, 1274 (10th Cir. 1999). The court further held that lack of prejudice is not relevant to the analysis. *Id. See also Concorde Resources, Inc. v. Woosley (In re Woosley),* 855 F.2d 687, 688 (10th Cir.1988) (harmless error analysis has no application to jurisdictional requirements). Rule 8001(a) has not been amended in any comparable fashion.

In this case, the notice of appeal was filed by Barrett & Daines, but listed only Todd Davis as the appellant. Barrett & Daines argue that because the bankruptcy court awarded sanctions jointly and severally against both Davis and counsel, it was unnecessary for counsel to appeal in its own right. Because it is possible that only one party will appeal a judgment entered against multiple parties, however, the reference in the notice of appeal to the order imposing sanctions cannot provide objectively clear notice of the attorney's intent to appeal if the appeal is in the client's name only. The Tenth Circuit has held that a notice of appeal that names only the client as the appellant does not allow the attorney to appeal an order of sanctions. *Woosley,* 855 F.2d at 688 (district court properly dismissed appeal from bankruptcy court order imposing sanctions, where sanctions were imposed against attorney but notice of appeal only listed client as appellant).[7]

In light of the foregoing, and because the notice of appeal does not contain the name of Barret & Daines, we dismiss its appeal for lack of appellate jurisdiction.

■■■■  The court retains jurisdiction over Davis, however, and we further hold that the bankruptcy court failed to follow proper procedure for imposing sanctions under Fed. R. Bankr.P. 9011. Rule 9011(c)(1)(B) provides that, on the court's initiative, it may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm or party to show cause why it has not violated subdivision (b) with respect thereto. A party that is the target of a sanctions request has a due process right to "notice that such sanctions are being considered by the court and a subsequent opportunity to respond" before final judgment. *Braley v. Campbell,* 832 F.2d 1504, 1514 (10th Cir.1987) (en banc). An opportunity to be heard does not require an oral or evidentiary hearing on the issue; an opportunity to fully brief the issue is sufficient to satisfy due process requirements. *Id.* at 1515.

---

7. The Rule 3(c) issue has arisen with some frequency in the context of sanctions awards. *See, e.g., Maerki v. Wilson,* 128 F.3d 1005, 1007 (6th Cir.1997) (interpreting Fed. R.App. P. 3(c)); *Agee v. Paramount Communications, Inc.,* 114 F.3d 395, 399 (2d Cir.1997) (same). *But see Corp. of the Presiding Bishop v. Assoc.* *Contractors, Inc.,* 877 F.2d 938, 939 n. 1 (11th Cir.1989) (court concluded that if sanctions were imposed jointly and severally against an attorney and client, a notice of appeal in the name of the client alone is sufficient), *cert. denied,* 493 U.S. 1079, 110 S.Ct. 1133, 107 L.Ed.2d 1038 (1990).

In this case, the bankruptcy court did not give Davis the opportunity to be heard. When the issue of Cache Valley Bank's dischargeability complaint came up, the court noted the potential conflict and told counsel that, "I want to know after the recess why that isn't the grossest of conflicts and what the court should do about it." There was no further mention of sanctions until the court made its ruling at the end of trial. On remand, we direct the bankruptcy court to issue an order to show cause why Davis is not in violation of Rule 9011(b), with an opportunity for the parties to be heard.

■ As sanction for making a frivolous defense, the bankruptcy court ordered Davis and counsel to pay attorney fees incurred by Groetken, based on the affidavit filed during the trial. The court found the amount of fees requested in the affidavit was reasonable in the full amount of $10,071.86, without any apparent review. The plain language of Rule 9011 requires the court to independently analyze the reasonableness of the requested fees and expenses. *White v. General Motors Corp., Inc.*, 908 F.2d 675, 684 (10th Cir.1990), *cert. denied*, 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). Davis was not given the opportunity to respond to the attorney fee request prior to the bankruptcy court's approval. On remand, we direct the bankruptcy court to reexamine the attorney fee request after permitting Davis to respond in writing to the reasonableness of the fees.

■ We note that sanctions must be appropriate in amount and levied upon the person responsible for the violation. *Chevron, U.S.A., Inc. v. Hand*, 763 F.2d 1184, 1187 (10th Cir.1985). The sanctioning of a party requires specific findings that the party was aware of the wrongdoing. *White*, 908 F.2d at 685. The bankruptcy court appears to have assessed joint and several liability upon Davis and counsel without considering relative fault or how the potential conflict impacted the proceeding before it. Therefore, on re-

mand the court should make specific findings regarding who, if anyone, bears the fault for the various actions warranting sanctions. *Id.* at 686.

### D. Costs.

■ The bankruptcy court awarded costs in the amount of $4,520.06 to Groetken as specified in his Certificate of Costs. This award was separate from the award of sanctions, and was made only against Davis. Davis filed an objection to the costs as submitted, which the court summarily overruled without a hearing. Davis admits that the Certificate of Costs was submitted in accordance with the rules of procedure, but contends the award was improper under 28 U.S.C. § 1920.

Neither the Certificate of Costs nor Davis's objection are included in Davis's appendix. Excerpts of the record sufficient for consideration and determination of the issues on appeal must be filed in accordance with Fed. R. Bankr.P. 8009(b). 10th Cir. BAP L.R. 8009–1(a). Where, as here, the appellant has not adequately designated in the appendix sufficient evidentiary materials necessary to consider an issue, and the relevant evidence cannot be reconstructed from any other appendix or the trial court's opinion, the appellate court cannot rule on the issue. *Taylor v. Phelan*, 9 F.3d 882, 884 n. 4 (10th Cir. 1993). Failure to provide an adequate record for review makes it impossible for the Court to determine whether the bankruptcy court's award of costs was an abuse of discretion. *United States v. Vasquez*, 985 F.2d 491, 494–95 (10th Cir.1993); *In re Rambo*, 209 B.R. 527, 530 (10th Cir. BAP), *aff'd without opinion*, 132 F.3d 43 (10th Cir.1997). Accordingly, the award of costs is affirmed.

### V. Conclusion.

For the reasons set forth above, the decision of the bankruptcy court regarding nondischargeability and costs is AFFIRMED; the appeal of Barrett & Daines

is DISMISSED; and the order imposing sanctions and attorneys fees is REMANDED for further proceedings in accordance with this opinion.