In re Shawn STRECKER, Debtor.

No. 00–13746–SBB.

United States Bankruptcy Court, D. Colorado.

June 7, 2000.

Conrad R. Kindsfather, Conrad R. Kindsfather and Associates, Arvada, CO, for debtor.

Jeff Allan McCoon, Oakhurst, CA, for Jeff Allan McCoon, d/b/a Pacific States Credit Co.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court, *sua sponte,* on the Motion for Production of Documents pursuant to Fed. R.Bankr.P. 2004 and L.B.R. 204 ("Rule 2004 Motion") filed herein by Pacific States Credit Company ("Pacific States"), a sole proprietorship of Jeff Allan McCoon. Conrad R. Kindsfather, counsel for Shawn Strecker ("Debtor"), appeared at the hearing in person. Mr. McCoon appeared telephonically from his offices in California. The Court, having reviewed the file, hearing the statements of Mr. McCoon and Mr. Kindsfather, and being otherwise duly advised in the premises, enters the following findings of fact, conclusions of law and order.

### *Introduction*

The Movant here, an out-of-state creditor which buys bundles of "bad check" claims "by the gross," seeks turnover of Debtor's bank records and information pursuant to Fed.R.Bankr.P. 2004. The creditor is doing so to ascertain whether it may have a claim against the Debtor to bar Debtor's discharge in bankruptcy, pursuant to 11 U.S.C. § 727, or bar dischargeability of the creditor's three bad check

claims, pursuant to 11 U.S.C. § 523. The Rule 2004 Motion in this case reflects a score or more of similar recently-filed motions by this creditor, all of which essentially request the same thing.

## Issue

The issue before this Court is whether an assignee of a claim in a debtor's bankruptcy case has an unlimited right to conduct an examination pursuant to Fed.R.Bankr.P. 2004 for the purpose of determining whether a cause of action exists under 11 U.S.C. §§ 523 or 727.

■ The Court answers this question in the negative. A creditor—here the assignee of claims represented by "bad checks"—does not have an unlimited and unqualified right to conduct an examination of a debtor pursuant to Fed. R.Bankr.P. 2004.

This is particularly true where, as here, the creditor has absolutely no independent knowledge, or additional facts, or a colorable legal claim, to pursue a claim under 11 U.S.C. §§ 523 and/or 727, other than the mere fact that the Debtor wrote a "bad check."

■ For the reasons set forth herein, this Court will not approve any future Fed.R.Bankr.P. 2004 Motions from Pacific States or Jeff Mr. McCoon unless there is, *at least*, some recital of some fact(s)— beyond the mere issuance of an insufficient funds check—that the debtor had engaged in some conduct that might support a colorable argument that there is conduct which would warrant a determination that

a particular debt is non-dischargeable under 11 U.S.C. § 523 or that such conduct warrants the denial of a debtor's discharge under 11 U.S.C. § 727. The Court further holds that Fed.R.Bankr.P. 2004 examinations are not an unfettered and totally unqualified tool for "fishing" for adverse information.

## Facts

On April 5, 2000, Debtor filed for relief under Chapter 7 of the Bankruptcy Code. On May 1, 2000, a Proof of Claim was filed by Pacific States for the sum of $300.00.[1] The basis for the claim is "NSF CHECKS." Furthermore, Pacific States, by its Proof of Claim, indicates that its claim is secured by household goods.[2] Together with the filing of the Proof of Claim, on May 1, 2000, a Notice of Assignment and Request for Notice was filed indicating that Pacific States purchased from and is the successor-in-interest to Checkcare Systems ("Checkcare"). The checks purchased were as follows:

| Date | Check No. | Payee | Amount [3] |
|------|-----------|-------|--------|
| 5/31/99 | 2796 | My Mart | $16.14 |
| 5/12/99 | 2766 | My Mart | $17.58 |
| 5/12/99 | 2753 | Conoco | $ 4.94 [4] |

Thus, based upon the copies of checks attached to the Proof of Claim and as referenced in the Notice of Assignment and Request for Notice, the sum total of the checks purchased by Pacific States, was $38.66.

On May 1, 2000, the Rule 2004 Motion was filed. The documents sought by the Motion included

1. This sum seems to be calculated roughly as "treble damages."

2. Mr. McCoon and Pacific States have not demonstrated that these checks were secured by *anything*. As Mr. McCoon should know, as he signed the proof of claim, the penalty for presenting a fraudulent claim may include a substantial fine or imprisonment, or both. 18 U.S.C. §§ 152 and 3571.

3. Per the Notice of Assignment and Request for Notice filed herein by Pacific States, these

amount do not include a $40.00 service charge per check, court costs and attorneys' fees.

4. During the May 30, 2000 hearing Mr. McCoon indicated that this check amount was $49.40. The Court is relying on the proof of claim filed on April 27, 2000 and the Notice of Assignment and Request for Notice filed on May 1, 2000 which both indicate that this amount is $4.94.

debtor's bank records which the debtor may possess copies of or, if not, is able to readily obtain copies of from the respective financial institutions. Nonetheless, production is permissible as well as warranted. Any inconvenience or burden is self imposed by the debtor as one subjects themselves to examination under 11 USC § 343 and FRBP 2004(b) upon filing a bankruptcy petition.

In addition, the Rule 2004 Motion demanded production of Debtor's Schedules A through J with the "Summary of Schedules" and "Financial Affidavit." The documents requested in the Rule 2004 Motion are demanded to "assess and determine if a well grounded or substantially justified cause of action exists under § 523 or § 727." The Rule 2004 Motion was filed prior to the § 341 meeting of creditors scheduled for May 10, 2000.

The Rule 2004 Motion also indicated that Pacific States is not a corporation, partnership or unincorporated organization. Thus, Pacific States contends it can appear before this Court, *pro se,* by Mr. McCoon as he was asserting his own private interests.

On May 5, 2000, this Court entered its Notice of Hearing in regard to this matter scheduling a hearing for May 30, 2000 to consider the Rule 2004 Motion and any response by the Debtor.

On May 11, 2000, the Debtor, through his attorney, responded to the Rule 2004 Motion and provided the requested documents to Pacific States. On May 21, 2000, Pacific States moved to withdraw its Rule 2004 Motion in light of the Debtor's prompt and timely response.

On May 26, 2000, the Court entered an Order permitting the withdrawal of the Rule 2004 Motion, but the Court did not vacate the hearing set for May 30, 2000. At the hearing on May 30, 2000, Mr. McCoon appeared by telephone and responded to questions raised by the Court. The Court inquired of Mr. McCoon about this case, the numerous similar Rule 2004 motions Pacific States has recently filed in this Court, and the business of Movant, Pacific States. The Court ascertained the following information.

Roughly 50% of Pacific States' business is the purchase of "bad checks." Mr. McCoon informed the Court that "bundles" of "bad checks" are purchased by Pacific States twice each month. He estimated that approximately 500 checks are purchased by his company each month.

Most of Pacific States' collection efforts are conducted in California and Colorado, as they are the locus for writing most of the "bad checks" purchased by Pacific States. However, Mr. McCoon also advised that Pacific States has pursued collection of "bad checks" in other states including Utah and Washington.

Mr. McCoon acknowledged that the checks in question in this matter were written almost 11 months prior to Debtor's bankruptcy filing. Furthermore, Pacific States was not involved in the original transaction and, in fact, has no actual knowledge of the transaction, other than the checks had been returned for insufficient funds.

Mr. McCoon advised the Court that, as of the hearing, he had no grounds whatsoever, no independent information or corroborating "facts" which would support, or even suggest, the filing of a complaint under either 11 U.S.C. § 523 or § 727. Nonetheless, he explained that he had not yet had an opportunity to review the materials provided by the Debtor and thus could not, at this time, concede that there was not a basis to object to the Debtor's discharge or the dischargeability of these three small debts.

Debtor's counsel advised the Court that the Debtor complied with Pacific States' Rule 2004 Motion because it was "the course of least resistance." Debtor simply could not afford to oppose the Rule 2004 Motion and run up still more attorneys' fees.

### Discussion

#### 1. *"Bad Checks"*

The mere issuance of a "bad check," standing alone, is not grounds for a determination that such debt is not dischargeable pursuant to 11 U.S.C. § 523(a)(2). *In re Davis,* 246 B.R. 646, 652 (10th Cir. BAP 2000). There must be other acts, other evidence, supporting a claim for fraud or false representations in addition to the "bad check" to declare a debt on a "bad check" non-dischargeable under 11 U.S.C. § 523(a)(2). A determination that such a debt is non-dischargeable can only be established if the debtor did not intend to pay the creditor when the check was issued and knew the check would bounce. *In re Degraffenreid,* 131 B.R. 178, 180 (Bankr.N.D.Okla.1991). A creditor must show—directly or by inference—that the debtor made a false representation with the specific intent to defraud in connection with the issuance of the "bad check." *In re Collins,* 28 B.R. 244, 247 (Bankr.W.D.Okla.1983).

Here, Pacific States was not involved in the original transaction, but is simply the assignee of Checkcare which, based on information in the file, is presumably a check service or collection agency for My Mart and Conoco. These checks were written almost 11 months prior to bankruptcy. Pacific States has no direct knowledge that these checks were issued fraudulently or under false pretenses with an intent to defraud. Furthermore, the checks in question *only total $38.66,* but Pacific States is pursuing a claim in this bankruptcy of *at least* $300.00. Claims which, Mr. McCoon advised, had been purchased for a fraction of the sum due.

In regard to any other cause of action under 11 U.S.C. §§ 523 or 727, Pacific States admits it has no information, no evidence, and no basis, at this time, for a cause of action under either section. Moreover, the only evidence of any conceivable wrongdoing by the Debtor—the three checks—have no connection and no apparent available legal theory which would make the Debtor's "bad checks" actionable under 11 U.S.C. § 727. Barring other facts to the contrary, this Court cannot even conceive of any cause of action under Section 727 of the Bankruptcy Code emanating from merely and exclusively writing a "bad check." Thus, the inquiry of this Court must go to the scope and breadth of Fed.R.Bankr.P. 2004.

#### 2. *Scope of Fed.R.Bankr.P. 2004*

Rule 2004 provides, in part, that the scope of an examination:

> may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right of discharge.

Fed.R.Bankr.P. 2004(b). As a general rule, examinations under Rule 2004 are allowed for the purpose of discovering assets, examining transactions, and determining whether wrongdoing has occurred. *In re Duratech Industries, Inc.,* 241 B.R. 283, 289 (E.D.N.Y.1999). Necessarily, the scope of Fed.R.Bankr.P. 2004 is extremely broad and the rule itself is "peculiar to bankruptcy law and procedure because it affords few of the procedural safeguards that an examination under Rule 26 of the Federal Rules of Procedure" offers. *In re GHR Energy Corp.,* 33 B.R. 451, 454 (Bankr.D.Mass.1983). In fact, as Mr. McCoon suggests, Rule 2004 examinations have been compared to "fishing expeditions." *In re Wilcher,* 56 B.R. 428, 433 (Bankr.N.D.Ill.1985). "Although Rule 2004 examinations have been characterized as fishing expeditions, they are not without bounds." *In re Buick,* 174 B.R. 299, 305 (Bankr.D.Colo.1994).

Rule 2004 examinations cannot be used for the purpose of abuse or harassment and the examination cannot go beyond the bounds of what is, or may be, relevant to the inquiry. *In re Symington,* 209 B.R. 678, 684–85 (Bankr.D.Md.1997); *In re Table Talk,* 51 B.R. 143, 145 (Bankr.

D.Mass.1985); *In re Mittco, Inc.,* 44 B.R. 35, 36 (Bankr.E.D.Wis.1984). Examinations under Rule 2004 should not be used to annoy, embarrass or oppress the debtor. *In re Coffee Cupboard, Inc.,* 128 B.R. 509, 514 (Bankr.E.D.N.Y.1991).

Mr. McCoon indicated that Pacific States usually files motions to produce documents under Fed.R.Bankr.P. 2004 in the bankruptcy cases in which Pacific States has become a successor-in-interest to a "bad check" claim. This process purportedly enables Pacific States the opportunity to determine whether it (or he, Mr. McCoon) will pursue a cause of action under 11 U.S.C. §§ 523 or 727. However, it is evident that Pacific States did not, in this case, even wait to attend—or actually attended—the § 341 meeting of creditors, or informally contact Debtor's counsel before filing the Rule 2004 Motion. More likely and perhaps as an intended consequence, under the circumstances such as these, the motions to produce documents and supply information under Fed.R.Bankr.P. 2004, tend to harass, intimidate, and/or coerce debtors into (a) summarily seeking unwise or forced settlements, (b) incurring unnecessary and burdensome attorney's fees and other costs, or (c) paying off Pacific States to avoid a trial, or complete denial of a discharge. This Court simply cannot permit *carte blanche* authorization to Pacific States' "fishing expeditions" without some alleged conduct, or other facts, which could lead to a cause of action, beyond the mere fact that a debtor has filed bankruptcy long after the writing of a de minimus "bad check."

### Conclusion
IT IS THEREFORE ORDERED

1. This Court will not approve any future Fed.R.Bankr.P. 2004 motions from Pacific States or Mr. McCoon unless there is, *at least,* some recital of some fact(s)—beyond the mere issuance of an insufficient funds check—that the debtor had engaged in some conduct which could lead to a determination that a particular debt is

non-dischargeable under 11 U.S.C. § 523 or that such conduct warrants the denial of a debtor's discharge under 11 U.S.C. § 727.

2. Pacific States is to file with this Court, **on or before June 23, 2000,** an explanation as to the nature of the security interest in Debtor's household goods as evidenced in its Proof of Claim filed on May 1, 2000. Failure to do so may result in denial of its claim, in toto, and/or referral to the United States Attorney for presenting a fraudulent claim.