**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 23 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

KENT JENSEN; CAROL JENSEN,

Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE,

Respondent-Appellee.

No. 98-9021
(T.C. No. 20121-94)
(Petition for Review)

**ORDER AND JUDGMENT** *

Before **BALDOCK** , **HENRY** , and **MURPHY** , Circuit Judges.


After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioners Kent Jensen and Carol Jensen appeal from an order of the United States Tax Court, which upheld respondent's assessment of deficiencies against petitioners in income tax due for tax years 1988, 1989 and 1990. We affirm.

I.

Jay Jensen, petitioner Kent Jensen's father, devised a formula for creating artificial fingernails. In July 1984, petitioners incorporated K & C Industries ("K&C"), a Utah business corporation, to make commercial use of the formula.

Initially, petitioners each contributed assets having a net value of $2,941 to K&C. For this contribution, they each received 5,000 shares of K&C stock. Additionally, petitioners contributed trade fixtures, a computer system and intangible assets consisting of the fingernail formula and their expertise in the beauty products business.

In 1985, K&C had gross receipts of $401,100 and gross profit of $260,715, but operated at a taxable loss of $188,682. That year, petitioners paid themselves a salary of $79,300 from K&C. In 1986, K&C had gross receipts of $468,321 and gross profit of $304,409, but operated at a taxable loss of $233,767; petitioners paid themselves a salary of $70,000 from K&C.

By the middle of 1987, K&C was out of business. Petitioner Kent Jensen testified that K&C failed in part because it grew too fast. Lacking sufficient cash

flow to pay its suppliers, K&C had been forced to seek lines of credit from factoring companies. On June 19, 1987, one of these companies, Commercial Factors of Salt Lake City, Inc., entered K&C's business and removed most of its assets, files and records. K&C shut down completely after that date.

In the aftermath of K&C's failure, petitioners claimed a deduction for bad business debt in the amount of $128,841 on their 1987 personal income tax return. In support of the deduction, petitioners claim they had loaned K&C the sum of $129,682 between 1984 and 1987. [2] Included in this sum was $94,000 which Jay Jensen had loaned to petitioners. Respondent denied the deduction and related net operating loss carryforwards for 1988, 1989 and 1990, and petitioners filed this action in Tax Court.

Petitioners argue in the alternative that they were either entitled to a business bad debt deduction with respect to the alleged loans to K&C, or that they were entitled to a 26 U.S.C. § 1244 ordinary loss deduction with respect to 40,000 shares of K&C stock that had been issued to Jay Jensen. The Tax Court rejected both of these contentions and disallowed the claimed deductions.

II.

_____

[2]    An exhibit prepared by petitioners shows that they made loans to K&C in the amount of $132,538.35.    See Ex. 29.  The factual stipulation of the parties, however, states that petitioners "transferred funds" in the amount of $129,682. See Stip. of Facts at 5, ¶ 22.

Decisions of the United States Tax Court are reviewed in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury. We review the Tax Court's factual findings for clear error and its legal conclusions de novo. Findings of law and of ultimate fact derived from applying legal principles to subsidiary facts are subject to *de novo* review.

Twenty Mile Joint Venture, PND, Ltd. v. Commissioner, 200 F.3d 1268, 1275 (10th Cir. 1999) (quotations and citations omitted).

### III.

The Internal Revenue Code allows an individual taxpayer to deduct business debts which become worthless against ordinary income. See 26 U.S.C. § 166(a), (d)(1)(A). To give rise to a deduction, the debt must be a "bona fide debt." 26 C.F.R. § 1.166-1(c). "A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Id. The regulations specifically exclude contributions to capital from the definition of a bona fide debt. See id.

Determination of whether a particular debt is a bona fide debt for tax purposes "depends on the facts and circumstances of each case, with the taxpayer bearing the burden of proof." Kean v. Commissioner, 91 T.C. 575, 594 (1988). The ultimate issue to be resolved is whether there was a "genuine intention to create a debt, with a reasonable expectation of repayment, and did that intention comport with the economic reality of creating a debtor-creditor relationship?"

-4-

Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 494 (1980) (quotation omitted), acq. 1982-2 C.B. Courts considering this issue, while recognizing that no one factor is controlling, have looked at a variety of relevant factors. The Tax Court has summarized some of these factors as follows:

> [1] The names given to the certificates evidencing the indebtedness; [2] presence or absence of a fixed maturity date; [3] source of payments; [4] right to enforce payments; [5] participation in management as a result of the advances; [6] status of the advances in relation to regular corporate creditors; [7] intent of the parties; [8] identity of interest between creditor and stockholder; [9] thinness of capital structure in relation to debt; [10] ability of corporation to obtain credit for outside sources; [11] use to which advances were put; [12] failure of debtor to repay; and [13] risk involved in making advances.

Calumet Indus., Inc. v. Commissioner, 95 T.C. 257, 285 (1990); see also Stinnett's Pontiac Serv., Inc. v. Commissioner, 730 F.2d 634, 638 (11th Cir. 1984).

1. **Treatment of funds on documents prepared by the parties**

At trial, petitioners presented four promissory notes payable from K&C to themselves, which they claimed represented K&C's obligation to repay the funds they loaned to it:

| Date | Payee | Amount |
|------|-------|--------|
| July 23, 1984 | Kent Jensen | $7,341 |
| July 23, 1984 | Carol Jensen | $7,341 |
| March 21, 1985 | Kent Jensen | $85,000 |

February 12, 1986          Carol Jensen                    $30,000

TOTAL:                                                    $129,682

Promissory notes were prepared to represent K&C's indebtedness to petitioners.  This factor therefore weighs in favor of petitioners.

2.  **Presence or absence of due dates for repayment of funds**

This factor favors petitioners.  The notes do have fixed repayment dates.

3.  **Likely source of repayment of funds**

Kent Jensen testified that in his opinion, K&C had sufficient cash flow to repay the funds advanced to it.  Expectation of repayment solely from corporate earnings is indicative of capitalization rather than a bona fide debt, even if the expectation of repayment is reasonable.      See Roth Steel Tube Co. v. Commissioner , 800 F.2d 625, 631 (6th Cir. 1986).

As a fallback position, petitioners argue that the fingernail formula could have been sold at a profit, and used to repay the notes.  Given that exploitation of the formula represented the    *raison d'être*  of K&C, however, the Tax Court could properly have rejected petitioners' theory that they intended to sell the formula rather than see K&C default on the notes to them.      Cf. Dixie Dairies , 74 T.C. at 495 (stating that although taxpayer documented advance to related entity with demand note, it was clear that taxpayer would not have demanded payment if it would have imperiled the financial condition of related entity; therefore,

-6-

repayment was dependent upon the fortunes of the business and was indicative of equity).

4. **Efforts to enforce repayment of the funds**

The Tax Court found that petitioners received no repayment of the funds advanced and no payments of interest thereupon. Principal payments on each of the notes were not due until after the date on which K&C ceased operations. Each of the notes called for annual payments of accrued interest, however, which was not paid. By contrast, petitioners did pay interest to outside creditors.

5. **Participation by transferor in corporate management**

Petitioners held all of the corporate offices. Kent Jensen was president and treasurer of K&C, and Carol Jensen was its Vice President and Secretary. Kent, Carol and Jay Jensen served as the corporation's board of directors.

6. **Subordination of right to repayment**

The Tax Court made no findings on this point. As respondent points out, however, petitioners obtained no security interest in K&C's assets, whereas other creditors did obtain such security.

7. **Intention of the parties**

Petitioners argue that the promissory notes reveal their intention to loan money to the corporation rather than to capitalize it. The existence of promissory notes certainly weighs in petitioners' favor. However, as the Tax Court noted,

these notes were not issued contemporaneously with the advances and do not match the amount of the advances. Moreover, even if petitioners had the intent to create a bona fide debt, the economic situation at the time petitioners made the advances weighs in favor of the advances being considered capital contributions. See id. at 494. K&C lost large sums of money each year and required contributions to capital just to stay in business.

8. **Whether transferor was also a shareholder**

Petitioners were both shareholders of K&C. They argue, however, that their loans to K&C were not in proportion to their stock ownership. This argument presumes that the certificate in favor of Jay Jensen, granting him eighty percent of the stock, should have been issued to Kent Jensen. As will be seen, the Tax Court found that petitioners did not carry their burden as to this argument. If Jay Jensen in fact owned eighty percent of K&C, the advances made by petitioners were roughly proportionate to their percentage of stock ownership, which is indicative of an equity investment. See Roth Tube , 800 F.2d at 630.

9. **Capitalization of the corporation**

The Tax Court found that the initial capitalization of K&C was very slim, considering its liabilities. Petitioners argue that in reaching this conclusion, the Tax Court failed to factor in the value of trade fixtures, the computer system and intangible assets such as the fingernail formulation.

Petitioners argue that, considering these additional factors, their debt-to-equity ratio was 1 to 1.  While their figures may be accurate with regard to their "inside" ratio (shareholder debt to shareholder equity), the pertinent ratio for purposes of this factor is the "outside" ratio, which compares the corporation's total liabilities to shareholder equity.      See Bauer v. Commissioner , 748 F.2d 1365, 1368 (9th Cir. 1984);    see also  Ginsberg v. Commissioner  , No. 92-2263, 1993 WL 315682, at **3 (6th Cir. Aug. 18, 1993) (unpublished disposition) (discussing outside ratio in context of § 166(a) determination of debt versus equity).  The outside ratio is more relevant because it is the ratio a prospective creditor would have considered when deciding whether to advance funds.

It is not possible to calculate the outside ratio here, because petitioners did not present information such as financial statements or balance sheets for K&C from which the corporation's total liabilities could be determined.  We note, however, that K&C reported large cumulative net operating losses on its tax returns, which suggests low net shareholder equity.  Therefore, this factor weighs against petitioners.

10.  **Availability to K&C of outside financing**

The Tax Court found that K&C was unable to obtain outside financing. Petitioners argue that they had $440,000 of available unsecured credit, that Interlake Thrift provided them with $272,000 in secured financing, and that

Commercial Factoring gradually increased their credit limit. In assessing this factor, however, we look not only at whether outside credit was available in an absolute sense, but also at whether a reasonable creditor would have acted in the same manner as did the taxpayers. See Roth Steel Tube, 800 F.2d at 631. As respondent notes, the loans from outsiders were on much less favorable conditions to K&C than the alleged loans from petitioners. Therefore, this factor does not favor petitioners.

11. **Use of the funds by the corporation**

Petitioners argue that the funds they allegedly loaned to K&C were used to continue expansion of the corporation, to fulfill its inventory needs, and to promote the sales of its products. Given the sizeable salaries petitioners drew from K&C during its brief existence, and the large losses reported on its tax returns, however, it is more plausible to conclude that K&C needed the funds advanced simply to meet expenses.

12. **Repayment history**

It is true, as petitioners note, that the principle amount of the notes was not due until long after K&C went out of business. Interest payments were due, however, during the corporation's existence, but not made, suggesting an intent to capitalize the corporation rather than to deal with it as a creditor. See Dixie Dairies, 74 T.C. at 495.

-10-

13. **Risk involved in making the transfers**

The risk was serious here, because of the secured debts to prior creditors and lack of net profits. This factor cuts against petitioners.

Having considered the evidence in light of factors generally utilized in resolving such questions, we conclude that the advances were capital contributions. The Tax Court did not commit reversible error in determining that petitioners were not entitled to the claimed bad debt deduction under § 166.

IV.

We turn to petitioners' alternative claim, that they are entitled to an ordinary loss deduction under § 1244 for the value of the 40,000 shares issued to Jay Jensen. [3] The issue to be resolved here is whether petitioners owned the 40,000 shares. Petitioners bore the burden of proof on this issue. See Tax Court R. Prac. & Proc. 142(a); Preslar v. Commissioner, 167 F.3d 1323, 1326 (10th Cir. 1999).

Kent Jensen testified that Jay Jensen was concerned about his lack of security for the advances in favor of K&C. Therefore, all the shares of K&C were to be pledged to Jay Jensen. By certificate dated August 5, 1986, however, 40,000 out of the 50,000 shares of K&C were issued directly to Jay Jensen.

---

[3] Respondent concedes that petitioners are entitled to a § 1244 deduction for the 10,000 shares issued to them.

-11-

Petitioners claim that the stock certificate contains a clerical error, and that the shares should have been issued to Kent Jensen rather than to Jay Jensen directly. They failed to produce records establishing that Kent was listed as the owner of the 40,000 shares on the books and records of the corporation. [4] They also failed to call the secretary who allegedly made the mistake. The only evidence they presented was Kent Jensen's self-serving testimony about the mistake, and the certificate itself which was issued to Jay Jensen but also pledged to him on its reverse. Given the state of the evidence, we cannot say that the Tax Court incorrectly determined that petitioners failed to meet their burden of showing that they owned the stock and were entitled to the loss deduction under § 1244.

---

[4] Petitioners argue that respondent has raised an issue about the "absence of business records" for the first time on appeal. Petitioners mischaracterize respondent's argument, however. Respondent is not arguing that petitioners were not entitled to the § 1244 deduction because they did not keep the records required by 26 C.F.R. § 1.1244(e)-1. Rather, respondent is questioning their failure to present such business records, which § 1.1244(e)-1(a) required them to keep, at trial to meet their burden of proof on the issue of whether the stock was actually issued to Kent Jensen. This argument falls squarely within the disputed § 1244 issue, raised below.

The decision of the Tax Court is AFFIRMED. [5]


Entered for the Court


Bobby R. Baldock
Circuit Judge

---

[5] Petitioners raise additional arguments which the Tax Court did not reach and which we need not resolve, given our disposition of this case. They contend that the funds allegedly loaned to K&C constituted a "business bad debt" for purposes of § 166. They also take issue with respondent's alternative argument, not relied upon by the Tax Court, that the claimed net operating loss deductions were not allowable because they were offset by discharge of indebtedness income in petitioners' personal bankruptcy. See 26 U.S.C. § 108(b).

-13-